BATTLES, APPELLEE, *v.* OHIO STATE RACING COMMISSION, APPELLANT.
CHENEY, APPELLEE, *v.* OHIO STATE RACING COMMISSION, APPELLANT.

[Cite as Battles v. Ohio State Racing Comm., 12 Ohio App. 2d 52.]

(Nos. 323 and 324—Decided October 4, 1967.)

*Mr. William B. Saxbe,* attorney general, and *Mr. Larry G. Brake,* for appellant.

*Mr. Lloyd G. Kerns* and *Mr. Joe F. Asher,* for appellee.

GUERNSEY, P. J. These two cases involve identical issues and were heard together. On June 10, 1966, George Battles was the owner and Robert T. Cheney was the trainer of a race horse named Gene Majesty which finished first in a race at Northfield Park (near Cleveland). Following the race a urine sample was taken from the horse, which, upon analysis, showed the presence of Butazolidin, a drug used to combat arthritic disorders and with pain relieving and fever reducing properties. Following appropriate charges and hearing before the Ohio State Racing Commission the respective licenses of Battles and Cheney were suspended for a period of sixty days for violation of Rule 311 of the Ohio Rules of Racing adopted by the commission, which reads in pertinent part as follows:

"The trainer shall be the absolute insurer of, and responsible for, the condition of the horses entered in a race, regardless of the acts of third parties. Should the chemical or other analysis of saliva or urine samples, or other tests, prove positive, showing the presence of any narcotic, stimulant, depressant, chemical or drug of any kind or description, the trainer of the horse may, in the discretion of the Commission, be subjected to any or all of the following penalties: suspension, revocation of license, being ruled off. In addition, the owner of the horse, the foreman in charge of the horse, the groom, and any other person shown to have had the care or attendance of the horse may, in the discretion of the Commission, be subjected to any or all of the aforesaid penalties. * * *"

Battles and Cheney then appealed to the Court of Common Pleas of Union County which found that (1) the order of the Racing Commission is "not supported by any reliable, probative or substantial evidence and is not in accordance with law as required by Section 119.12, Revised Code"; (2) Rule 311 is "unconstitutional, arbitrary and unreasonable and is not necessary for the protection of the betting public"; (3) "The application of Rule 311 * * * to the facts of the case at bar so as to suspend plaintiff-appellant's license is arbitrary, unreasonable and contrary to law as required by Section 119.11, Revised Code of Ohio and constitutes an unconstitutional exercise of power by defendant-appellee contrary to Section 1, Article II of Ohio Constitution"; and (4) "The suspension of plaintiff-appellant's licenses by the defendant-appellee upon the facts of

record would create an unusual and unreasonable hardship upon plaintiff-appellant and is not in accordance with law.'' On these findings the Common Pleas Court reversed the orders of the Racing Commission. It is from this judgment that the Racing Commission now appeals to this court and claims error of the Common Pleas Court in each of these findings.

This case does not come within that class of cases where a license holder is estopped from challenging the validity of a statute under which his license is suspended or revoked because he has assented and subjected himself to the provisions of such statute. *P & P Taverns, Inc.,* v. *State,* 11 Ohio App. 2d 11; *State, ex rel. Zugravu,* v. *O'Brien,* 130 Ohio St. 23; and *Solomon* v. *Liquor Control Commission,* 4 Ohio St. 2d 31. Those cases involve statutory enactments by the General Assembly, and this case involves a rule adopted by an administrative agency. In an appeal under the provisions of Section 119.11, Revised Code, from an order adopting, amending, or rescinding a rule of an administrative agency, a Common Pleas Court may review adherence to procedural requirements in such adoption, amendment, or rescission, and may review the reasonableness and lawfulness of the rule in its general application. Section 119.11, Revised Code, further provides in its last paragraph that ''no person affected thereby shall be precluded from attacking *at any time* the reasonableness or legality of any rule *in its application to a particular set of facts or circumstances.''* (Emphasis added.) In appeals to the Common Pleas Court under Section 119.12, Revised Code, such as those here under review, the Common Pleas Court is given jurisdiction to determine whether upon the evidence adduced in an adjudication hearing pertaining to licensing (and such additional evidence as the court has admitted) the order of the agency ''is supported by reliable, probative, and substantial evidence and is in accordance with law.'' It is not given any jurisdiction to determine the reasonableness and lawfulness of any administrative rule in its general application but may, under the provision of the last paragraph of Section 119.11, Revised Code, above quoted, review the reasonableness or legality of any rule involved in the licensing adjudication in its application to the particular set of facts or circumstances also involved in such adjudication. The appellate jurisdiction of Common Pleas Courts being statutory and

there being no jurisdiction bestowed upon such courts in appeals under Section 119.12, Revised Code, to find an agency rule unconstitutional, arbitrary and unreasonable in its *general* application, we must conclude that the Common Pleas Court committed error in its second finding to such effect.

We come then to determine whether Rule 311 is unreasonable and unlawful in its application to the facts or circumstances involved in the adjudication hearing from which these appeals arose. The record of such hearing contains no evidence whatsoever that either the owner or trainer participated in or had any knowledge of the administration of Butazolidin to the horse in question, and it is undisputed in evidence that the horse was sound, not suffering from fever, had no history of leg ailments, lameness or soreness, and had no disorders or cause for medication. The record is silent as to how or by whom the Butazolidin was administered to the horse in question or, during the same period of time, to six other horses of other owners racing at the same track. It is apparent from the record and order of the Racing Commission that the suspensions were based solely on the facts that Battles and Cheney were among those persons named in Rule 311 and that the urinalysis showed the presence of a matter classified as a drug or a chemical.

It is further clear from an examination of Rules 310, 311 and 313 of the Ohio Rules of Racing in effect at the time of this incident that these rules do not make any distinction as to the effect which the drug or chemical may have upon a race horse and that its mere presence is sufficient to prove a literal violation of Rule 311. Although such violation does not constitute a criminal offense it may result in certain penalties, including, as here, the suspension of the owner's and trainer's licenses, and reference may be had to criminal procedure to determine by analogy whether the rule is unreasonable or unlawful in its application to the particular set of facts or circumstances herein involved.

There are certain classes of offenses which are *malum prohibitum* where *scienter* is not made an element of the offense and need not be proved. See *Solomon* v. *Liquor Control Commission*, 4 Ohio St. 2d 31, 35, and authorities therein cited. How-

ever, offenses of such nature, in which it is immaterial that the defendant acted in good faith or did not know that he was violating the law, are limited to certain rough classifications, as set forth in *City of Toledo* v. *Kohlhofer,* 96 Ohio App. 355. It has also been held in Ohio that "where a statute defines an offense regardless of *scienter,* and the means of knowledge are available to the accused or the act is such as to impose a duty (in the interest of the public weal) upon the offender at his peril to ascertain the fact of violation, knowledge is not an essential element to support conviction; but under a charge of violating a statute which does not by its terms include *scienter* as an element of the offense, where the means of knowledge or the circumstances are such that the accused is not bound at his peril to know the fact and obey the law, proof of knowledge of the fact is essential to support a conviction." *State* v. *Williams,* 94 Ohio App. 249. See, also, 22 Corpus Juris Secundum 105, Criminal Law, Section 30. Following these standards it would appear, and we conclude, that it is in the public weal to impose, under the provisions of Rule 311, upon an owner or trainer, regardless of *scienter,* the liability of license suspension when the presence of a narcotic, stimulant, depressant, chemical or drug, which may directly affect the racing ability of the horse, is discovered. It would also appear, and we also conclude, that it is not in the public weal to impose such liability because of the discovered presence in a urine sample of a drug or chemical not proved to have a direct effect on such racing ability, unless *scienter* is proved. As an arthritic medicine, having qualities as a pain reliever and fever reducer, Butazolidin might, when administered in certain cases where a horse is suffering pain or fever, make that horse feel better, but there is no evidence in our record that it would, in such case, result in either an increase or decrease of its speed, and certainly nothing in our record to show that its administration to a well and "sound" horse would alter its capabilities for speed in any respect. We are fully aware of the conclusions of the Court of Appeals of the Second Appellate District in the case of *Fogt* v. *Ohio State Racing Commission,* 3 Ohio App. 2d 423, and must agree with such conclusions in application to the drug or chemical involved therein, which was "in the nature of procaine," a local anes-

thetic or depressant, found in the urine of a horse which admittedly had been administered a penicillin drug within forty-eight hours prior to the race.

On the evidence herein relating to the reasonableness of Rule 311, as applied to the facts or circumstances herein, we cannot conclude, as a matter of law, other than did the Common Pleas Court, that such rule is unreasonable as so applied. Upon such conclusion it follows that it is also illegal as so applied. Being unreasonable and illegal as so applied, it was in violaton of Section 119.11, Revised Code, and we do not, therefore, have to determine any supposed issue of its constitutionality in its application, and the Common Pleas Court was in error to the extent that it did so. The rule being unreasonable and illegal in its application, the orders of the Racing Commission suspending Battles' and Cheney's licenses were not supported by reliable, probative, and substantial evidence and in accordance with law, and the Common Pleas Court was not in error in so finding.

The finding of the Common Pleas Court that the suspension of these licenses "upon the facts of record would create an unreasonable hardship upon" the license holders "and is not in accordance with the law" is a redundancy and is merely repetitive of the finding that Rule 311 is unreasonable and unlawful in its application to the facts or circumstances resulting in the license suspensions.

To the extent that the findings of the Common Pleas Court are inconsistent with this opinion, the same are vacated, and such findings as are not inconsistent with this opinion and the judgment of the Common Pleas Court entered thereon are affirmed.

*Judgment affirmed.*

MIDDLETON and YOUNGER, JJ., concur.