THE STATE OF OHIO (CITY OF MIDDLETOWN), APPELLEE, *v.* ALLIED PEST CONTROL, APPELLANT.

(Nos. CA85-10-110 through -112 — Decided July 14, 1986.)

*Jeffrey P. Giuliano,* city prosecutor, for appellee.

*Jack T. Schwarz* and *Dennis E. Gump,* for appellant.

*Per Curiam.* This cause came on to be heard upon the appeal from the Middletown Municipal Court.

On May 31, 1985, three complaints were filed against defendant-appellant, Allied Pest Control, charging it with violating R.C. 921.25 as a result of appellant's treatment of a Middletown, Ohio, residence for termites. Appellant was found guilty of all three charges during a bench trial before the Middletown Municipal Court. Appel-

lant was fined $3,000 for each conviction with half of the collective fines suspended on the condition that appellant not reappear in municipal court on similar charges.[1]

According to the transcript of testimony, on September 29, 1983, one of the appellant's inspectors called on Lucille Moler at her residence and informed her that appellant was conducting an inspection of homes in the neighborhood. Moler testified that the representative had inspected the crawl space beneath her home and told her that he had found a "few" termites and recommended that her home be treated. Moler then signed a work order which stated that "Termites [were] found in debris in crawl [space]." In addition, Moler signed a contract for the treatment of her home. The following morning, another of appellant's representatives arrived and began treating Moler's residence. According to Moler, the technician spent about an hour treating her home and announced that he was finished.

Moler paid for the treatment by check. A short time after the treatment, Moler's son and daughter-in-law, having compared the price of appellant's treatment with those of other pest control companies, suggested that the price was too high and advised Moler to stop payment on the check. Moler accepted their advice, notified her bank to stop payment on the check, and also executed a written cancellation of the contract with appellant.

The Ohio Department of Agriculture, responding to a call from Moler's daughter-in-law, sent Donald Blair, a pesticide control specialist, to inspect the Moler residence. Blair testified that he inspected the outside of the house, the porches, crawl space and other parts of the residence. Blair also took soil samples and bark samples from both a tree and stump in the yard. Blair offered the opinion that appellant had improperly applied the pesticide, known as Termide, in treating the Moler residence. He based this opinion on his observations that ground rodding was not deep enough, that voids in concrete blocks had not been treated, that there was no evidence of ground rodding or trenching in the crawl space, and that the back porch had not been completely drilled — all of which suggested that a proper chemical barrier had not been established between the structure and the soil. Blair also stated that he found no evidence of termite infestation in the house and that all loose boards and cellulose material had not been removed from the crawl space as required by the pesticide label. Finally, Blair stated that the soil and bark samples revealed that the pesticide had been sprayed on trees and had been used too close to the soil surface.

Michael Feraro, appellant's president, testified that the job on the Moler residence was not completed on September 30, but was to be finished the following week. After Moler stopped payment on her check, Feraro considered the contract cancelled and, consequently, no technician was dispatched to complete the treatment of Moler's home. According to Feraro's testimony, appellant's technicians were trained to remove active debris and he admitted that the presence of debris in the crawl space would reflect an incomplete and unprofessional job. However, Feraro stated that the failure to drill into the concrete blocks would not reflect a lack of treatment

---

[1] Two other complaints were filed against appellant in connection with its similar treatment of a second residential structure. Those charges, tried jointly with the ones that are the subject of this appeal, were dismissed at the close of the state's case.

136

since the voids in the blocks could be flooded through the seal in the top of the crawl space, obviating the necessity to drill.

Appellant's first three assignments of error allege that its three convictions of violating subsections (F), (A) and (M), respectively, of R.C. 921.25 were all against the weight of the evidence. The fourth assignment of error contends that the multiple convictions were allied offenses of similar import. R.C. 921.25 provides in part as follows:

"It is unlawful for any person:

"(A) To apply, use, supervise such application or use, or recommend a pesticide for use inconsistent with its labeling or other restrictions imposed by the director of agriculture;

"* * *

"(F) . To operate in a faulty, careless, or negligent manner or operate faulty or unsafe equipment;

"* * *

"(M) To make a false or misleading statement in an inspection concerning any infestation of pests or the use of pesticides [.]"

This appeal requires us to review R.C. 921.25, the prohibited practices section of R.C. Chapter 921, relating to pesticides. Neither party has cited any cases dealing directly with R.C. 921.25. Our own research has produced only two cases which discuss the statute.[2]

In the first assignment of error, appellant attacks its conviction under R.C. 921.25 (F), claiming that the court's finding that appellant operated in a negligent manner was against the weight of the evidence. We feel it is especially important to note that the trial court deleted the words "faulty" and "careless" from the complaint and proceeded solely on the culpable mental state of negligence.[3]

Negligence, insofar as it applies to a culpable mental state for criminal conduct, is defined by R.C. 2901.22(D) as follows:

"A person acts negligently when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist."

In order for a defendant to act negligently under the above standard, there must be a "substantial lapse from due care." What constitutes a substantial lapse is not easily determined since "[t]he word 'substantial' is . a relative and not an exact term. It has been said to be as elusive a word as the English language contains, and is of varied meaning. It is susceptible of different meanings according to the circumstances of its use, and in considering the word it must be examined in its relation to the context, and its meaning is to be gauged by all the circumstances surrounding the transaction

[2] In one of the two cases, *State* v. *Torco Termite Pest Control* (1985), 27 Ohio App. 3d 233, 27 OBR 274, 500 N.E. 2d 401, the defendant was charged with violating R.C. 921.25(A) and (F). The defendant moved to dismiss on a statute of limitations ground. The trial court denied the request and the defendant appealed. On appeal, the Franklin County Court of Appeals only discussed the issue of the existence of a final appealable order without addressing the specific charges under R.C. 921.25. Accordingly, that decision is of little assistance to our review of the case at bar.

[3] Appellant's argument for deleting the words "faulty" and "careless" from the complaint was that those mental states are not defined by the Revised Code. Without an appropriate statutory definition, it is quite possible that the trial court found such language to be impermissibly vague.

with respect to which it has been used." *State* v. *Ovens* (1974), 44 Ohio App. 2d 428, at 431, 73 O.O. 2d 540, at 542, 339 N.E. 2d 853, at 856.

While the evidence clearly demonstrates that appellant's treatment was "incomplete," such was to be expected when Moler stopped payment on the check, effectively voiding the contract and relieving appellant of any duty to complete the treatment which, according to a notation on the work order, was scheduled for the week following the initial treatment. If the violation of the appropriate standard of due care is premised upon the state inspector's opinion that the pesticide simply was not properly applied to the premises, then we find that such is not sufficient to show a substantial lapse from due care. There can be no doubt that appellant's technician applied the pesticide in a poor and seemingly unprofessional manner. However, we cannot equate a lack of quality work with criminal negligence. While such job performance will undoubtedly result in lost customers and a bad business reputation, it should not result in criminal convictions and monetary fines. Who can say, beyond a reasonable doubt, that the application was not the result of a lazy employee or an incomplete application left unfinished because of Moler's stop-payment order on the check? From all circumstances surrounding the transaction in questions, we find that the record is such that it cannot be said beyond a reasonable doubt that appellant's conduct constituted a substantial lapse from due care. The first assignment of error is well-taken.

For its second assignment of error, appellant claims that the trial court's finding that appellant used a pesticide in a manner inconsistent with its labeling is also against the weight of the evidence. This concerns the violation of R.C. 921.25(A) and involves appellant's alleged spraying of trees and stumps on the Moler property with a pesticide designed specifically for subterranean application. Although Moler did not actually see the technician spray the trees, Blair testified that an analysis of bark samples taken from the Moler property revealed the presence of chlordane and heptachlor, active ingredients in the Termide which was used by appellant.

The Termide label contains directions for use of the pesticide for subterranean treatment, specifically referring to pre-construction and post-construction subterranean termite control. However, the general information section states that service technicians should be familiar with control practices including "trenching, rodding, sub-slab injection and *low pressure spray application.*" (Emphasis added.) The label certainly contains no prohibition against the spraying of Termide, and more specifically against the spraying of trees. In fact, the label specifically contemplates the spraying of the pesticide by means of low pressure application.

Somewhat similar to the matter at bar is the case of *Dover* v. *Jackson* (Oct. 24, 1985), Tuscarawas App. No. 85A03-024, unreported. In that case, the Tuscarawas County Court of Appeals reversed a conviction under R.C. 921.25(A) on the basis that the pesticide label did not show that above-ground spraying was inconsistent with the labeling or, conversely, that only subterranean application was consistent with the labeling. As the court did in that case, we also ask the following questions: If the labeling is so clear in requiring only subterranean application, then why does the label caution that service technicians be familiar with spraying techniques unless, of course, spraying is contemplated by the label? It is abundantly clear that, whatever this labeling may or may not

direct, reasonable minds could conclude that an above-ground spraying is not inconsistent with the label. *Dover v. Jackson, supra.* We also find the second assignment of error to be well-taken.[4]

The third assignment of error questions the weight of the evidence regarding the conviction under R.C. 921.25(M) in that appellant's representative made a false or misleading statement regarding the presence of termites in Moler's residence. Apparently there was no great exaggeration as to the existence of the problem by appellant's representative. He simply told Moler that there were a few termites and that the home should be treated. One week after the initial treatment, the state inspector came along and found no existence of termites. The work order states that termites were found in the debris located in the crawl space. The work order also contained the following statement: "remove debris." When Blair inspected the crawl space a week later he found no evidence of termites but did find debris still within the crawl space. Feraro testified that appellant's technicians were instructed to remove "live debris" first. The fact that there were no termites a week after the treatment could be attributed to either the initial treatment itself or the removal of all active debris containing the "few termites" found by the inspector. The work order also indicated that there was the presence of "suspected termite activity." Who can say, beyond a reasonable doubt, that there were no termites present at the time of the initial inspection and that appellant's representative made a false and misleading statement. The third assignment of error is sustained.

Having sustained the first three assignments of error, we find appellant's fourth assignment of error to be moot and it is accordingly overruled. While appellant's conduct is certainly questionable, it surely is not criminal. There are adequate remedies to curb appellant's unprofessional activities other than criminal prosecution. As is the case in any other profession licensed and regulated by the state, appellant's license could be revoked or suspended by the Director of Agriculture. R.C. 921.24. The director could also seek to enjoin appellant from further activity of this nature. R.C. 921.26(B). However, criminal prosecution does not solve the problems created by a company which obviously is in need of either tighter internal controls or more rigorous state regulation.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, reversed and the cause remanded for further proceedings according to law and not inconsistent with this decision.

To all of which the appellee, by its counsel excepts.

*Judgment reversed*
*and cause remanded.*

KOEHLER, P.J., JONES, and HENDRICKSON, JJ., concur.

---

[4] Since we have disposed of this assignment on the broader issue of the weight of the evidence as did the court in *Dover* v. *Jackson, supra,* we do not pass on the constitutionality of the phrase "inconsistent with" as used in the statute, although we do have serious reservations as to whether that phrase is so vague that ordinary people of common intelligence can understand its language or must necessarily guess at its meaning and differ as to its application. Cf. *State* v. *Wear* (1984), 15 Ohio App. 3d 77, 15 OBR 106, 472 N.E. 2d 778.