CITY OF MIDDLETOWN, Appellee,

v.

CAMPBELL, Appellant.

[Cite as *Middletown v. Campbell* (1990), 69 Ohio App.3d 411.]

Court of Appeals of Ohio,
Butler County.

No. CA90–02–027.

Decided Sept. 17, 1990.

412

*Bruce Fassler*, City Prosecutor, for appellee.

*Lucas, Prendergast, Albright, Gibson & Newman* and *James E. Melle*, for appellant.

HENDRICKSON, Judge.

Defendant-appellant, Shirley Campbell, appeals her convictions in Middletown Municipal Court for vehicular homicide and failure to discharge children to a place of safety. We affirm.

On September 14, 1989, appellant was driving a school bus on which seven-year-old Christina Case was a passenger. She stopped the bus on Young Street near its intersection with Girard in the city of Middletown. Four students alighted from the bus, including Christina. While Christina was crossing Young Street in front of the bus, appellant drove the bus forward and ran over her with both the front and back wheels, causing her death.

Appellant was charged with violating Middletown City Ordinance Section 434.08, vehicular homicide, and R.C. 4511.75(E), failure to discharge children to a place of safety. The case was tried to the court on October 23, 1989. At the close of the state's case and at the close of all the evidence, the trial court overruled appellant's motions for judgment of acquittal. Subsequently, appellant was found guilty as charged. Her motions for acquittal after the verdict and for a new trial were also overruled. This appeal followed.

Appellant presents five assignments of error for review. In her first assignment of error, she states that the trial court erred in overruling her motions for judgment of acquittal. She argues that R.C. 4511.75(E) does not apply to bus drivers transporting students for a city school district. We find this assignment of error is not well taken.

R.C. 4511.75(E) provides:

"No school bus driver shall start his bus until after any child or person attending programs offered by community boards of mental health and county boards of mental retardation and developmental disabilities who may have alighted therefrom has reached a place of safety on his residence side of the road."

Appellant claims that she could not be convicted of violating this statute because Christina did not attend a program offered by a community board of mental health or a county board of mental retardation and developmental disabilities. We disagree.

"It is a cardinal rule that a court must first look to the language of the statute itself to determine legislative intent. * * * If that inquiry reveals that the statute conveys a meaning which is clear, unequivocal and definite, at that point the interpretive effort is at an end and the statute must be applied accordingly." *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 105–106, 65 O.O.2d 296, 298, 304 N.E.2d 378, 381; see, also, *State v. Carter* (1983), 3 Ohio St.3d 15, 16, 3 OBR 362, 363, 444 N.E.2d 1334, 1336. R.C. 4511.75(E) on its face applies to school bus drivers transporting two classes of persons: (1) children, and (2) persons attending the specified programs. The phrase "attending programs offered by community boards of mental health and county boards of mental retardation and development disabilities" modifies the word "person," not the word "child." Further, R.C. 4511.75 is the first of a series of statutes under the caption "school buses." R.C. 4511.75 itself is titled "[s]topping for school buses; signals." While these titles are not part of the law itself, they indicate that R.C. 4511.75 applies to school buses generally, not just school buses transporting a small class of persons.

Additionally, R.C. 4511.75 is a recodification of G.C. 6307–73, which stated: "No school bus driver shall start his bus until after any child who may have alighted therefrom shall have reached a place of safety." See *Culwell v. Brust* (1949), 91 Ohio App. 309, 311, 48 O.O. 398, 399–340, 108 N.E.2d 173, 175. Courts in other contexts have applied R.C. 4511.75(E) to school bus drivers transporting children in general. See *Kantola v. State Farm Ins. Co.* (1979), 62 Ohio Misc. 11, 16 O.O.3d 380, 405 N.E.2d 744.

We hold that R.C. 4511.75(E) applies to bus drivers discharging school children. Therefore, reasonable minds could differ as to whether appellant had failed to discharge Christina to a place of safety and the trial court did not err in overruling appellant's motions for judgment of acquittal. See *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus. Accordingly, appellant's first assignment of error is overruled.

In her second assignment of error, appellant states that the trial court erred in overruling her motions for judgment of acquittal and for a new trial because (1) R.C. 4511.75(E) is not a statute of strict liability; (2) the conviction is constitutionally infirm because the statute is unreasonable; and (3) the prosecution did not prove recklessness as required by R.C. 2901.21(B). Essentially, she argues that because the statute is silent as to culpability, a recklessness standard should be applied. In her third assignment of error, appellant states that the trial court erred in overruling her various motions because the state failed to prove the standard of care which she violated. Because these assignments of error are related, we will consider them together.

R.C. 2901.21(B) provides:

"When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in such section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense."

Because R.C. 4511.75(E) is silent as to culpability, we must determine whether the legislature has "plainly indicated" an intent to impose strict liability.

"The more serious the consequences [of violating a statute] are to the public, the more likely the legislature meant to impose liability without fault." *State v. Buehler Food Markets* (1989), 50 Ohio App.3d 29, 30, 552 N.E.2d 680, 682. Offenses created primarily to punish individual wrongdoers commonly require *mens rea*. On the other hand, regulations passed for the safety, health or well-being of the community are frequently enforced irrespective of any guilty intent. *Id.* The reasoning behind the imposition of strict liability for these public welfare offenses was described by the United States Supreme Court in *Morissette v. United States* (1952), 342 U.S. 246, 255–256, 72 S.Ct. 240, 246, 96 L.Ed. 288, 296:

"Many of these offenses are not in the nature of positive aggressions or invasions, with which the common law so often dealt, but are in the nature of neglect where the law requires care, or inaction where it imposes a duty. Many violations of such regulations result in no direct or immediate injury to person or property but merely create the danger or probability of it which the law seeks to minimize. While such offenses do not threaten the security of the state in the manner of treason, they may be regarded as offenses against its authority, for their occurrence impairs the efficiency of controls deemed essential to the social order as presently constituted. In this respect,

whatever the intent of the violator, the injury is the same, and the consequences are injurious or not according to fortuity. Hence, legislation applicable to such offenses, as a matter of policy, does not specify intent as a necessary element. The accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities. Also, penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation. * * * "

■ Thus, "[i]n Ohio, intent is not required where the accused had the means of knowledge relating to the facts of the violation, or, where, because of substantial and significant public interest involved, the accused had a duty to ascertain the facts of the violation." *Flint v. Ohio Bell Tel. Co.* (1982), 2 Ohio App.3d 136, 137, 2 OBR 150, 151, 440 N.E.2d 1244, 1246. See, also, *Battles v. Ohio State Racing Comm.* (1967), 12 Ohio App.2d 52, 56–57, 41 O.O.2d 100, 103, 230 N.E.2d 662, 666; *Toledo v. Kohlhofer* (1954), 96 Ohio App. 355, 362, 54 O.O. 360, 363, 122 N.E.2d 20, 26.

■ We find that R.C. 4511.75(E) fits into the class of public welfare statutes to which strict liability may be applied. It is a traffic offense, a minor misdemeanor, which regulates the discharge of school children. Traffic offenses and motor vehicle laws are two of the eight areas listed by the United States Supreme Court as amenable to the imposition of strict liability. *Morissette, supra,* 342 U.S. at 262, 72 S.Ct. at 249, 96 L.Ed. at 300. See, also, *Flint, supra,* 2 Ohio App.3d at 137, 2 OBR at 151, 440 N.E.2d at 1247; *Kohlhofer, supra,* 96 Ohio App. at 361, 54 O.O. at 363, 122 N.E.2d at 25. Ohio courts have often applied strict liability to traffic offenses, including driving under the influence of alcohol in violation of R.C. 4511.19, which carries much more severe penalties than a minor misdemeanor. See *State v. Cleary* (1986), 22 Ohio St.3d 198, 199, 22 OBR 351, 352, 490 N.E.2d 574, 575; see, also, *Akron v. Charley* (1982), 2 Ohio Misc.2d 1, 2, 2 OBR 51, 52, 440 N.E.2d 837, 839; *Akron v. Allen* (1981), 69 Ohio Misc. 4, 6, 23 O.O.3d 73, 74, 429 N.E.2d 1195, 1198.

R.C. 4511.75(E) was enacted to protect children who are boarding and leaving school buses, particularly those who are at risk when crossing in front of school buses and other vehicles on the road. Because of the great public interest in protecting children and preventing accidents such as occurred in this case, the statute places a duty upon the school bus driver to ascertain that children reach a place of safety. The school bus driver is in the best position to prevent the harm to a child by using the care society expects of bus drivers generally. Balancing the overall purpose of the statute and the harm it seeks to prevent against the penalty to those who violate the statute, we must

conclude that the legislature intended to impose strict liability. See *Buehler Food Markets, supra,* 50 Ohio App.3d at 31, 552 N.E.2d at 683.

Therefore, the state was not required to prove that appellant possessed a certain mental state or that she violated a standard of care to sustain a conviction under this statute. The state presented sufficient evidence that appellant failed to discharge a child to a place of safety on her residence side of the street. Thus, reasonable minds could differ as to whether all the elements of the offense had been proven beyond a reasonable doubt. Therefore the trial court did not err in overruling her motions for judgment of acquittal. *Bridgeman, supra,* syllabus. Furthermore, the verdict was sustained by the evidence and was not contrary to law. Therefore, the trial court did not err by failing to grant a new trial. Crim.R. 33(A)(4). Consequently, appellant's second and third assignments of error are overruled.

In her fourth assignment of error, appellant states that her conviction for vehicular homicide is against the manifest weight of the evidence. She argues that the state failed to establish that her conduct constituted a substantial lapse from due care. We find this assignment of error is not well taken.

"A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all elements of an offense have been proven beyond a reasonable doubt." *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, paragraph two of the syllabus.

Appellant was convicted of violating Middletown City Ordinance Section 434.08, which is identical to R.C. 2903.07. It provides that "[n]o person, while operating or participating in the operation of a motor vehicle * * * shall negligently cause the death of another." "Negligence," in the criminal context, is defined in R.C. 2901.22(D), which is identical to the applicable Middletown City Ordinance, as follows:

"A person acts negligently when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist."

This section defines a higher degree of negligence than ordinary negligence, in that it requires a substantial lack of due care. *State v. Ovens* (1974), 44 Ohio App.2d 428, 430–431, 73 O.O.2d 540, 542, 339 N.E.2d 853, 855. The word "substantial" is "susceptible of different meanings according to the circumstances of its use, and in considering the word it must be examined in its relation to the context, and its meaning is to be gauged by all the circumstances surrounding the transaction with respect to which it has been

used." *Id.* at 431, 73 O.O.2d at 542, 339 N.E.2d at 856. Ultimately, the determination of whether a lapse of due care is substantial is a question for the trier of fact. *Id.* at 432, 73 O.O.2d at 542, 339 N.E.2d at 856; *State v. McKeand* (Sept. 26, 1986), Butler App. No. CA86–02–018, unreported, at 6, 1986 WL 11405.

In studying the record before us, we conclude that there was substantial evidence upon which the court could reasonably conclude that all the elements of vehicular homicide were proven beyond a reasonable doubt. Christina got off the bus along with three other children and crossed in front of the bus to reach her residence on the other side. Appellant claimed she observed one child on the right side of the street and three children on the other side of the street, although two had their backs to her. Many children were in the vicinity as another bus had dropped off children shortly before appellant. Eyewitnesses testified that appellant was looking to the right to close the doors as she started the bus forward. Appellant failed to hear a motorist ten to fifteen feet from the bus blaring her horn to warn appellant that Christina was in the way. Eyewitnesses further observed the front of the bus rise up six to eight inches as the front wheel ran over the child. The evidence established that the front wheels ran over the child's legs. Eyewitnesses then saw the rear of the bus raise as the rear wheel ran over the child. Witnesses testified to seeing brain matter on the rear wheels supporting the inference that the rear wheels caused the head injury resulting in the child's death. The bus then traveled some sixty-eight feet from where the child was initially struck before it stopped.

In arguing that her conduct did not amount to a substantial lack of due care, appellant relies on this court's decision in *State v. Allied Pest Control* (1986), 33 Ohio App.3d 134, 514 N.E.2d 902. In that case, we reversed a conviction for negligent application of pesticides pursuant to R.C. 921.25. The evidence established that the appellant had improperly applied pesticides to a customer's residence, and we held that this evidence was not sufficient to show a substantial lack of due care. We stated, "[t]here can be no doubt that appellant's technician applied the pesticide in a poor and seemingly unprofessional manner. However, we cannot equate a lack of quality work with criminal negligence." *Id.* at 137, 514 N.E.2d at 905.

Appellant argues that the state merely proved not that she failed to account for the children, but that she failed to account for the children effectively in that she counted the wrong three children. At most, the circumstances of the case, she argues, show that she did not perform quality work which does not amount to criminal negligence. We disagree. First, we believe that driving a school bus presents a vastly different situation from applying pesticides.

Further, appellant had a duty to account for the children on her bus. She testified that she recognized Christina by face and yet she did nothing more than make sure three children were on the side of the road. She did not make an effort to ascertain who those children were, even though there were others around besides those who had alighted from the bus. Furthermore, she ran over the child not once, but twice, failing to hear the blaring car horn and failing to realize that the front of the bus had risen some six to eight inches. In our view, this evidence proves much more than a failure to do quality work; it supports the trial court's conclusion that her conduct amounted to a substantial lack of due care. Therefore, appellant's fourth assignment of error is overruled.

In her fifth assignment of error, *i.e.*, that the trial court erred in failing to exclude all testimony related to state's exhibit 11, the Bus Driver's Training Manual, she argues that the court should not have allowed the state to use the manual for cross-examination when it was requested during discovery but not produced until the morning of trial.

Crim.R. 16(B)(1)(c) provides that the prosecutor shall permit the defendant to inspect and copy books or documents available to or within the possession of the state and which are material to the preparation of the defense and are intended for use by the state as evidence at trial. Crim.R. 16(D) imposes a continuing duty to disclose additional matter a party may discover prior to a jury trial.

Immediately prior to trial, the state provided appellant's counsel with a copy of a pertinent page in the manual. Appellant objected, saying that it had not been provided during discovery. The prosecutor explained that he did not come "in contact with" or obtain a copy of the manual until the day before trial, that he did not have a chance to review it until that evening, and that he provided appellant's copy the following morning. The court reserved ruling on the issue. The state did not use the manual in its case-in-chief. When the state attempted to cross-examine a defense witness regarding the manual, appellant again objected. The prosecutor asserted that he did not intend to introduce the manual into evidence, only that he wished to use it for cross-examination. The trial court overruled appellant's objection. It also indicated that it would not grant a continuance.

Pursuant to Crim.R. 16(E)(3), when a party fails to provide discovery, the trial court may order the party to permit discovery or inspection, grant a continuance, prohibit the party from introducing into evidence the material not disclosed, or make any other order it deems just under the circumstances. The imposition of sanctions for discovery violations is within the discretion of

the trial court. *State v. Harcourt* (1988), 46 Ohio App.3d 52, 54, 546 N.E.2d 214, 218.

■ Assuming, *arguendo*, that the trial court's decision to allow the state to use the manual for cross-examination was an abuse of discretion, we find any error to be harmless beyond a reasonable doubt. "Error in the admission of evidence in criminal proceedings is harmless if there is no reasonable probability that the evidence may have contributed to the accused's conviction." *State v. Bayless* (1976), 48 Ohio St.2d 73, 2 O.O.3d 249, 357 N.E.2d 1035, paragraph seven of the syllabus, vacated as to death penalty (1978), 438 U.S. 911, 98 S.Ct. 3135, 57 L.Ed.2d 1155.

The prosecutor's questioning relating to the manual was as follows:

"Q. Do you find it to be the procedure that that section (m) there correctly outlines the procedure of when you discharge the children.

"A. Well, this ... the first (m)(1), it says that the driver should count the number of students getting off the bus and make sure the same number of students are in a place of safety on the residence side of the road before proceeding. That was not the way that we were taught to unload a school bus. We were never told that you let off all the ones on a residence side and that means to me that the ones that cross in front of your bus. I was never told that ... this part.

"Q. Alright. In reference to (m)(2), it says that the law requires the bus driver not to proceed until all students who have alighted have reached a place of safety on the residence side of the roadway, is that correct.

"A. Yes, sir."

That witness and several other bus driver witnesses testified that it was their practice to count the number of children getting off the bus and to count the number of children on the side of the road and that they knew not to proceed until all children had reached a place of safety. Appellant herself admitted that she had been taught the same thing during bus driver training. The thrust of the prosecution's case was that she had not counted the children correctly. Under the circumstances, we cannot say that there is a reasonable probability that the evidence in question contributed to her conviction.

■ Appellant also argues that the prosecution was improperly allowed to question a witness regarding an oral statement appellant had made which was not disclosed during discovery. Nevertheless, appellant did not object to this testimony. It is well established that the failure to object to an error in a criminal proceeding precludes the issue from being raised on appeal unless it rises to the level of plain error. *State v. Underwood* (1983), 3 Ohio St.3d 12, 13, 3 OBR 360, 361, 444 N.E.2d 1332, 1334. An alleged error does not rise to

the level of plain error unless, but for the error, the outcome of the trial clearly would have been otherwise. *State v. Wickline* (1990), 50 Ohio St.3d 114, 120, 552 N.E.2d 913, 920. Furthermore, "the plain error rule is to be applied with utmost caution and invoked only under exceptional circumstances, in order to prevent a manifest miscarriage of justice." *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 227, 4 OBR 580, 581, 448 N.E.2d 452, 453; *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus. Such "exceptional circumstances" are not present here, particularly given the ambiguity present in the statement. We cannot say that, but for the error, the outcome of the trial would have been different. Accordingly, appellant's fifth assignment of error is overruled.

*Judgment affirmed.*

JONES, P.J., concurs.

KOEHLER, J., dissents.

KOEHLER, Judge, dissenting.

It is difficult to consider an appeal from a conviction for vehicular homicide without compassion for the victim. The transcript of proceedings in this cause reflects testimony elicited by the prosecution relative to and the nature of the fatal injuries which were not at issue and not necessary in prosecuting the charge.

I believe that the majority in its consideration of the meaning of "a substantial lapse from due care" has allowed this testimony to raise appellant's active or passive negligence to criminal negligence.

Accordingly, I must dissent from the affirmation of appellant's conviction for vehicular homicide.