OPINION
Defendant-appellant, Charles Rife, appeals from a judgment of the Franklin County Municipal Court, whereby appellant was convicted of failure to confine a vicious dog in violation of R.C. 955.22(D)(2).
In December 1998, plaintiff-appellee, the state of Ohio, filed two complaints in the Franklin County Municipal Court charging appellant with failure to confine a dog to the owner's premises in violation of R.C. 955.22(C), and failure to confine a vicious dog while off the premises of the owner in violation of R.C. 955.22(D)(2). Appellant entered a no contest plea to R.C.955.22(D)(2). The trial court found appellant guilty of the violation under R.C. 955.22(D)(2), and dismissed the complaint regarding the R.C. 955.22(C) violation. Thereafter, the trial court sentenced appellant to forty days in jail; however, the trial court suspended thirty days of the jail sentence and permitted appellant to participate in a work release program for the remaining ten days. Further, the trial court fined appellant $100, plus court costs, and placed him on non-reporting probation for two years.
Appellant appeals, raising one assignment of error:
 THE TRIAL COURT ERRED IN CONSTRUING R.C. 955.22(D)(1) AS A STRICT LIABILITY PENAL STATUTE.
Although appellant refers to R.C. 955.22(D)(1) in his assignment of error, appellant was actually convicted of R.C.955.22(D)(2); however, in our analysis, we will consider both R.C.955.22(D)(1) and (2) because the subsections are governed by the same language relevant to our inquiry.
In his assignment of error, appellant argues that the trial court improperly applied a strict liability standard when it found him guilty of failing to restrain his vicious dog in violation of R.C. 955.22(D), because the Ohio Legislature did not intend to impose strict criminal liability on individuals who violate the section. We disagree.
R.C. 955.22(D) provides:
 No owner, keeper, or harborer [hereinafter "owner"] of a dangerous or vicious dog shall fail to do either of the following, except when the dog is lawfully engaged in hunting or training for the purpose of hunting, accompanied by the [owner], or a handler:
 (1) While that dog is on the premises of the [owner], securely confine it at all times in a locked pen which has a top, locked fenced yard, or other locked enclosure which has a top, except that a dangerous dog may, in the alternative, be tied with a leash or tether so that the dog is adequately restrained;
 (2) While that dog is off the premises of the [owner], keep it on a chain-link leash or tether that is not more than six feet in length and additionally do at least one of the following:
 (a) Keep that dog in a locked pen which has a top, locked fenced yard, or other locked enclosure which has a top;
 (b) Have the leash or tether controlled by a person who is of suitable age and discretion or securely attach, tie, or affix the leash or tether to the ground or a stationary object or fixture so that the dog is adequately restrained and station such a person in close enough proximity to that dog so as to prevent it from causing injury to any person;
(c) Muzzle that dog.
R.C. 955.22(D) does not specify what degree of culpability is required for an individual to be found guilty of violating the section. According to R.C. 2901.21(B), when a section defining an offense does not specify any degree of culpability and plainly indicates a purpose to impose strict liability for conduct described in the section, "culpability is not required for a person to be guilty of the offense." The Ohio Supreme Court has recently suggested that the language of the statute, and its purpose and policy considerations are the relevant factors to be considered when construing whether the Ohio Legislature intended to impose strict criminal liability for a particular offense. State v. Schlosser
(1997), 79 Ohio St.3d 329, 331-332; State v. Johnson (Oct. 24, 1997), Drake App. No. 96CA1427, unreported.
Initially, we note that R.C. 955.22(D) was enacted to promote public safety. Ownership of vicious and dangerous dogs poses a threat of harm to the public. See_ State v. Anderson
(1991), 57 Ohio St.3d 168, 170-171. Vicious and dangerous dogs have been causing an increasing number of fatalities and serious injuries to people. State v. Robinson (1989), 44 Ohio App.3d 128,129. Because of the potential harm caused by vicious and dangerous dogs, trial courts have the authority to order such dogs "humanely destroyed" in situations where the owner fails to properly confine and restrain the dogs. R.C. 955.99(F) and (G). As well, owners of vicious dogs are required to obtain a minimum of $50,000 in insurance to cover liabilities stemming from such dogs. R.C. 955.22(E). Thus, by requiring the owners of vicious and dangerous dogs to confine and restrain their dogs, the Ohio Legislature is using its police powers to minimize potential harm to the public. See Anderson, at 170 (recognizing that the state retains great power to regulate and control the ownership of dogs to protect the public).
Statutes enacted for the purpose of promoting the safety, health or well-being of the public are generally meant to be enforced under a strict liability standard. Middletown v.Campbell (1990), 69 Ohio App.3d 411, 415, quoting Morissette v.United States (1952), 342 U.S. 246, 255-256; see, also, State v.Buehler Food Markets (1989), 50 Ohio App.3d 29, 30 (noting that the more serious the consequences of violating a statute are to the public, the more likely the legislature meant to impose liability without fault). Strict liability is considered amenable to such public welfare statutes because an individual covered under the statute is in a position to prevent the offense with "no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his [or her] responsibilities." Campbell, at 416, quotingMorissette, at 246; see, also, Campbell, at 416, quoting Flintv. Ohio Bell Tel. Co. (1982), 2 Ohio App.3d 136, 137 (noting that, in Ohio, intent is not required in statutes where, "because of the substantial and significant public interest involved, the accused had a duty to ascertain the facts of the violation").
As well, the Ohio Legislature's intent to impose strict criminal liability on a public welfare statute is established by the statute's failure to refer to any culpable mental state and its containing the format "no person shall." State v. Schlosser
(May 24, 1996), Montgomery App. No. 14976, unreported, cited with approval in Schlosser, at 334; see, also, State v. Shaffer (1996),114 Ohio App.3d 97, 103. Here, R.C. 955.22(D) makes no reference to any requisite mens rea and begins by stating, "[n]o [owner] of a dangerous or vicious dog shall fail to do either of the following."
We acknowledge appellant's contention that our decision should turn on whether appellee is able to prove guilty knowledge of a criminal defendant. In making this argument, appellant relies on the Ninth District Court of Appeals' decision in BuehlerFood Markets. In Buehler Food Markets, the court noted that a difficulty in proving culpability of an offense is a factor to be considered in determining whether the Ohio Legislature intended to impose strict criminal liability on an offense. Id. at 31. While we recognize that a difficulty in proving culpability of an offense is a factor weighing in favor of strict criminal liability, we find no case law mandating that our decision be based primarily on such an assessment. Indeed, in Schlosser, the Ohio Supreme Court made no such assessment when deciding that Ohio's RICO statute imposes strict criminal liability on offenders of the statute. Schlosser, at 333.
As well, we find persuasive that other courts have held that R.C. 955.22(C) imposes strict criminal liability on the owner of any dog who fails to restrain or confine a dog to the owner's premises. See, e.g., State v. Squires (1996), 108 Ohio App.3d 716,718-719; State v. Miller (Feb. 23, 1994), Wayne App. No. 2820, unreported; State v. Judge (Apr. 19, 1989), Hamilton App. No. C-880317, unreported. The courts recognize that R.C.955.22(C) was enacted to minimize potential injury to persons and property presented by roaming dogs. See Squires, at 719; Miller; and Judge. As stated in Squires, R.C. 955.22(C) imposes a duty on a dog's owner "to keep it confined, and it makes the owner criminally liable for a breach of that duty regardless of how it came about." Squires, at 719. Our opinion today is further cognizant of the Ohio Legislature's efforts to protect the public from potential harm caused by roaming dogs, specifically in this case, vicious and dangerous dogs.
Thus, the language of R.C. 955.22(D), and its statutory and policy considerations, lead us to conclude that the Ohio Legislature intended to impose strict criminal liability on owners who fail to restrain or confine their vicious or dangerous dogs as specified in the section.
Accordingly, based on the above, we conclude that the trial court did not err in applying a strict liability standard when finding appellant guilty of violating R.C. 955.22 (D)(2). Therefore, we overrule appellant's single assignment of error and affirm the judgment of the trial court.
BRYANT and LAZARUS, JJ., concur.