OPINION
{¶ 1} In this timely appeal, the Ohio Department of Agriculture ("Dept. of Agr.") challenges the decision of the Jefferson County Court of Common Pleas to vacate an order issued by the Director of the Dept. of Agr. ("the Director"). The prior order imposed a fine of $500 on Bates Amusements, Inc. ("Appellee") for violating Ohio Adm. Code 901:9-1-03(E). The regulation prohibits amusement ride owners from allowing their rides to be operated by persons who appear to be intoxicated. The court of common pleas reversed the Director's decision, reasoning that Ohio Adm. Code 901:9-1-03(E) was not intended to impose strict liability on the owners of amusement rides. We hold that the court of common pleas abused its discretion in overturning the decision of the Director and reinstate that decision and fine.
 {¶ 2} This appeal arose out of events which occurred on July 21, 2000, at the Franklin County Fairgrounds. Deputy Sheriff Steven Tucker received information that an amusement park employee was operating one of the fair's kiddie rides while visibly intoxicated. (Tr., p. 13.) Deputy Tucker proceeded to a kiddie ride known as the "bat fighter" to further investigate. When he reached the ride, he observed that the ride's operator, Joe Gwyn, was leaning heavily on the mechanism that controls the ride. He observed Gwyn stagger and sway as he stepped away from the ride's operating mechanism. The ride was in operation at the time. (Tr., p. 16.) The deputy also noted that Gwyn reeked of alcohol, and he asked Gwyn to accompany him to the fairgrounds' command center for questioning. Gwyn was immediately replaced as operator of the ride. (Tr., p. 14.) According to the deputy, once alerted to the problem Appellee's representatives were cooperative throughout the incident. (Tr., p. 21.)
 {¶ 3} During questioning, Gwyn admitted that he had been drinking. Deputy Tucker immediately arrested Gwyn and placed him in the backseat of his cruiser. Gwyn appeared, in the deputy's words, as if, "[h]e could no longer care for himself." (Tr., p. 15.) Deputy Tucker charged Gwyn with, "persistent disorderly conduct while intoxicated." Gwyn spent the night in jail, and, on July 22, 2000, appeared in Franklin County Municipal Court. After pleading no contest to disorderly conduct, the court entered an order finding him guilty of that offense as set forth under R.C. § 2917.11(B)(2). (Tr., Exhs. K, L.)
 {¶ 4} It later turned out that Appellee hired Mr. Gwyn as a temporary employee the very day that the incident occurred. Appellee was unaware that Gwyn had a drinking problem. (Tr., p. 23.) During the half-hour break that Appellee allowed employees for dinner, Gwyn went to his nearby home and consumed a substantial amount of alcohol before returning to work that evening. (Tr., pp. 71, 79, 107.)
 {¶ 5} The Dept. of Agr. subsequently notified Appellee that it intended to fine the company $500 because the misconduct violated Ohio Adm. Code 901:9-1-03(E) and issued a citation. Appellee contested the citation and the matter proceeded to an administrative hearing on April 24, 2001.
 {¶ 6} The hearing officer found that Appellee violated Ohio Adm. Code 901:9-1-03(E). The officer concluded that the regulation was a strict liability offense:
 {¶ 7} "This issue which I must resolve is whether the employer of Mr. Gwyn should be assessed the proposed fine under the theory advanced by the state to the effect that Bates Amusements is strictly liable for the actions of its employees. The language of the regulation, though it appears to be in artfully [sic] drafted, does support that theory. No language requiring negligence or intent of the employee is contained therein. The very fact that Bates hired a person who is later found to be drunk, thereby subjecting innocent consumers, in this case children, to possible physical harm is enough to give the department the authority to impose the fine." (6/7/01 Decision, pp. 4-5.)
 {¶ 8} The hearing officer determined that the possible fine represented a civil, rather than a criminal, sanction:
 {¶ 9} "Counsel for Bates seems to advance the theory that once the employee was found guilty of a criminal offense, that no civil remedy should be pursued. I find this logic to be flawed and conclude, therefore, that the Department of Agriculture is not required to elect between two different remedies. Both may be, and in this case, were pursued." (6/7/01 Decision, p. 5.)
 {¶ 10} Although the hearing officer concluded that a fine could be imposed, he recommended against it. The hearing officer stated:
 {¶ 11} "Having concluded that the Department is legally empowered to assess the fine, I must now address the issue whether imposition is equitable in this instance. * * * The employer clearly acted responsibly in this situation and there really are no additional reasonable steps which it should have taken to ensure the sobriety of its employee. All employees must read the employee manual which contains language forbidding use of alcohol while they are working and they are screened as much as possible before they are hired.
 {¶ 12} "My conclusions in this case are further buttressed by the sterling record Bates Amusements has amassed during its many years of operation. The fair security and Mr. Groff testified that this employer runs an excellent operation and that no past complaints have been lodged against it." (6/7/01 Decision, p. 5.)
 {¶ 13} The Director adopted the hearing officer's findings of fact and conclusions of law. Nevertheless, the Director refused to follow the hearing officer's recommendations concerning the fine, and a $500 fine was imposed. (8/2/01 Order.)
 {¶ 14} Appellee appealed to the Jefferson County Court of Common Pleas pursuant to R.C. 1711.56(B) and asked the court to set aside the Director's order. In a judgment entered on April 19, 2002, the court vacated the Director's order and set aside the citation and the fine, holding that, "the fine imposed upon [Bates Amusement] is penal in nature and the Legislature has not plainly indicated a purpose to impose strict liability * * * based upon the facts of this case." The court held that Appellee could not be held liable as a matter of law. (4/19/01 J.E., p. 2.)
 {¶ 15} On May 16, 2002, The Dept. of Agr. filed a Notice of Appeal to this Court from the decision entered by the Jefferson County Court of Common Pleas, alleging two assignments of error, which will be treated together because they are interrelated.
 {¶ 16} The Dept. of Agr.'s first assignment of error asserts:
 {¶ 17} "The lower court erred when it found that Bates Amusement Company, Inc. was not strictly liable for the conduct of its employee."
 {¶ 18} The second assignment of error states:
 {¶ 19} "The lower court erred when it found that the fine imposed was penal in nature."
 {¶ 20} The Dept. of Agr.'s brief on appeal immediately begins to analyze the alleged errors in the trial court opinion without first establishing the standards of review that apply to this case. The standards of review in this case are crucial to our process and must be set forth in some detail.
 {¶ 21} When an owner of an amusement ride is fined under the authority of R.C. 1711.50 et seq., the owner is entitled to the administrative due process rights set forth in R.C. 119.06-119.13. See R.C. 1711.56. One of those rights is the right to appeal the decision of an administrative agency. R.C. 119.12. An appeal of a decision of the Dept. of Agr. is made to an appropriate court of common pleas, which in this case was the Jefferson County Court of Common Pleas.
 {¶ 22} The role of the court of common pleas in an administrative appeal is set forth in R.C. 119.12:
 {¶ 23} "The court [of common pleas] may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law."
 {¶ 24} There are two parts to the standard of review set up in R.C. 119.12. With regard to factual findings, "an agency's findings of fact are presumed to be correct and must be deferred to by a reviewing court unless that court determines that the agency's findings are internally inconsistent, impeached by evidence of a prior inconsistent statement, rest upon improper inferences, or are otherwise unsupportable." Ohio Historical Soc. v. State Emp. Relations Bd. (1993),66 Ohio St.3d 466, 471, 613 N.E.2d 591. With regard to purely legal questions, the court of common pleas conducts a de novo review of the agency's decision. Id.
 {¶ 25} In other words, "[the] administrative appeal to the common pleas court was restricted to determining whether [the agency's] decision was supported by reliable, probative, and substantial evidence, and was in accordance with law[.]" State ex rel. Baker v. State Personnel Bd. ofReview (1999), 85 Ohio St.3d 640, 643, 710 N.E.2d 706.
 {¶ 26} Either party may appeal the judgment of the court of common pleas in an administrative appeal. R.C. 119.12. If the agency wishes to appeal, the possible grounds for appeal are specifically listed in R.C.119.12:
 {¶ 27} "Such appeal by the agency shall be taken on questions of law relating to the constitutionality, construction, or interpretation of statutes and rules of the agency, and in such appeal the court may also review and determine the correctness of the judgment of the court of common pleas that the order of the agency is not supported by any reliable, probative, and substantial evidence in the entire record."
 {¶ 28} The standard and scope of review of the court of appeals is narrower than that of the court of common pleas:
 {¶ 29} "The appellate court's review is even more limited than that of the trial court. While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for those of the [agency] or a trial court. Instead, the appellate court must affirm the trial court's judgment." Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621,614 N.E.2d 748.
 {¶ 30} The Dept. of Agr. raises two legal challenges to the judgment of the court of common pleas. The Dept. of Agr. contends that the court of common pleas erred when it concluded that Ohio Adm. Code901:9-1-03(E) is a not a strict liability offense. The Dept. of Agr. also contends that the $500 fine the Director imposed was not penal in nature, in contrast to the court of common pleas' interpretation. In addressing these two issues, we keep in mind that the purpose of our review is to determine whether the Dept. of Agr. had any proper legal and factual basis for imposing a $500 fine on Appellee. If the Dept. of Agr. had a proper legal and factual basis for imposing the fine, the court of common pleas should not have vacated the fine.
 {¶ 31} Amusement ride safety is addressed under R.C. 1711.50
et seq. R.C. 1711.53(B) provides that:
 {¶ 32} "The director [of agriculture] * * * shall adopt rules providing for a schedule of fines, with no fine exceeding five thousand dollars, for violations of * * * any rules adopted under this division and for the classification of amusement rides and rules for the safe operation and inspection of all amusement rides as are necessary for amusement ride safety and for the protection of the general public."
 {¶ 33} R.C. 1711.56(A) further defines the Director's enforcement authority:
 {¶ 34} "The director of agriculture may fine any owner of an amusement ride for a violation of sections 1711.50 to 1711.57 of the Revised Code or any rules issued under division (B) of section 1711.53 of the Revised Code pursuant to a schedule of fines established under division (B) of section 1711.53 of the Revised Code. The fine shall not exceed five thousand dollars."
 {¶ 35} Pursuant to the authority granted by R.C. 1711.50 et seq., the Director adopted numerous rules governing amusement rides, including Ohio Adm. Code 901:9-1-03, which states:
 {¶ 36} "No person shall interfere with any inspector in the performance of his lawful duties of inspection or operate or cause to be operated an amusement ride or device as defined in division (A) of section1711.50 of the Revised Code under any of the following conditions:
 {¶ 37} "* * *
 {¶ 38} "(E) When any employee or operator appears to be impaired due to the influence of alcohol, drugs or is fatigued."
 {¶ 39} As the parties acknowledge, R.C. 1711.53 and Ohio Adm. Code901:9-1-03 are silent with respect to whether the Director may impose a fine for a regulatory violation in the absence of any fault on the part of the amusement ride owner. One must examine the nature of a statute or regulation to determine whether a culpable mental state should be implied as one of the elements of violating the regulation:
 {¶ 40} "The more serious the consequences are to the public, the more likely the legislature meant to impose liability without fault. For example, the offenses created primarily for the purpose of singling out individual wrongdoers for punishment and correction are the ones commonly requiring mens rea. Police offenses, merely regulatory in nature, are frequently enforced irrespective of any guilty intent." (Citations omitted.) State v. Buehler Food Markets, Inc. (1989), 50 Ohio App.3d 29,30, 552 N.E.2d 680
 {¶ 41} Although laws created to punish individual wrongdoers normally require a culpable mental state, regulations made to secure the safety, health, or well-being of the public are often enforced irrespective of any culpable mental state. Middletown v. Campbell
(1990), 69 Ohio App.3d 411, 415, 590 N.E.2d 1301. Such regulatory offenses are mala prohibita, that is, acts defined as, "unlawful for the good of the public welfare regardless of the state of mind." State v.Schlosser (1997), 79 Ohio St.3d 329, 333, 681 N.E.2d 911, 914. Strict liability is an appropriate way to enforce such statutes. Middletown,69 Ohio App.3d at 416, 590 N.E.2d 1301.
 {¶ 42} In Morissette v. United States, the United States Supreme Court explained the justification for strict liability in civil and criminal cases involving public safety or welfare. Morissette noted that such cases,
 {¶ 43} "[D]o not fit neatly into any accepted classifications of common-law offenses * * *. Many of these offenses are not in the nature of positive aggressions or invasions * * * [and] result in no direct or immediate injury to person or property but merely create the danger or probability of it which the law seeks to minimize." Morissette v. UnitedStates (1952), 342 U.S. 246, 255-256, 72 S.Ct. 240, 96 L.Ed. 288.
 {¶ 44} Ohio Adm. Code 901:9-1-03 undeniably regulates behavior that affects the safety, health, or well-being of the public. An intoxicated ride operator may fail to operate the ride correctly, may fail to implement safety measures, or may be unable to respond to dangers or emergencies that might arise while the ride is running. Although the mere fact that the ride operator is intoxicated may not directly injure anyone, the situation creates, as Morissette states, a, "danger or probability of it which the law seeks to minimize." Morissette at 256,72 S.Ct. 240, 96 L.Ed. 288. Therefore, Ohio Adm. Code 901:9-1-03 falls into the category of regulations that may be enforced irrespective of fault. The trial court's legal premise for vacating the citation was in error.
 {¶ 45} Appellee contends that it played no part in letting its employee, Joe Gwyn, become intoxicated or to continue to operate the ride after Appellee became aware of Gwyn's intoxication. Appellee concludes that there is nothing in the record indicating that it committed an unlawful act, unless it would be the act of hiring Mr. Gwyn. If Appellee is implying by this line of argument that there were no other steps it could have taken to prevent Mr. Gwyn from operating his designated ride while intoxicated, we must reject this assertion. Clearly, Appellee could have required more supervision over new employees, required employees who go home for lunch to check in with the management prior to operating their rides, or required new employees to be teamed with more seasoned employees. It does not appear that Ohio Adm. Code 901:9-1-03(E) contains an unreasonable or unattainable requirement, particularly in light of the public safety concerns involved. It was Appellee who had the best chance of enacting policies and procedures to keep the intoxicated employee out of the reach of their patrons. Clearly, after hiring this new employee and putting him on the job, Appellee had no further contact with him during the day. When a member of the public alerted the police to the danger, Appellee's behavior was exemplary. Perhaps the rules enacted by statute were intended to encourage, and will encourage, owner/operators of amusement rides to tighten their supervisory practices.
 {¶ 46} Appellee also contends that the Dept. of Agr. overstepped the legislative boundaries set in R.C. 1711.53(B) and 1711.56(A) when it set a strict liability standard in Ohio Adm. Code 901:9-1-03(E). This argument is groundless. R.C. 1711.53(B) gives the Director broad powers to adopt rules, "for the safe operation and inspection of all amusement rides," and the statute does not limit that rulemaking power to fault-based regulations. The same is true for R.C. 1711.56(A). Ohio Adm. Code 901:9-1-03(E) deals with a safety issue in the operation of amusement rides, and clearly falls within the parameters of R.C. 1711.53(B) and 1711.56(A).
 {¶ 47} Although the Director applied a strict liability standard in finding that Ohio Adm. Code 901:9-1-03(E) had been violated, the Director exercised its discretion in determining the amount of the fine to impose. The Director could have imposed up to a $1,000 fine, according to Ohio Adm. Code 901:9-1-09(A):
 {¶ 48} "(A) The following violations may be subject to a fine of not more than one thousand dollars for the first violation and not more than five thousand dollars for each subsequent violation:
 {¶ 49} "(1) Any violation of the prohibitions listed in paragraphs (A) to (H) and paragraph (J) of rule 901:9-1-03 of the Administrative Code."
 {¶ 50} The record shows that Appellee violated Ohio Adm. Code901:9-1-09(A), and that the violation involved a new employee who operated a ride while intoxicated on his first day on the job. Both this Court and the Jefferson County Court of Common Pleas must defer to the judgment and discretion of an administrative agency when the record contains reliable, probative, and substantial evidence supporting the agency's decision. The Dept. of Agr.'s decision in this case is amply supported by the record, and we therefore sustain Appellant's first assignment of error and reimpose the $500 fine established by the Dept. of Agr.
 {¶ 51} As to Appellant's second assignment of error, dealing with whether Ohio Adm. Code 901:9-1-03(E) is a civil or criminal regulation, we initially presume that the fines authorized by R.C. 1711.53 and 1711.56
are civil rather than criminal fines, because a statute, "[c]onferring authority to punish upon an administrative agency is prima facie evidence that the General Assembly intended the punishments imposed * * * to be civil in nature." State v. Thompson (1999), 132 Ohio App.3d 755, 759,726 N.E.2d 530. We do not need to resolve this issue any further, because our analysis of whether Ohio Adm. Code 901:9-1-03(E) imposes strict liability would be the same regardless of whether the regulation imposes a civil or criminal fine. Therefore, our resolution of this issue would result in nothing more than an advisory opinion on our part. The duty of this Court is, "to decide actual controversies between the parties and to enter judgments capable of enforcement. We are not required to give mere advisory opinions or to rule on questions of law which cannot affect the matters in issue in the case before us." State v. Bistricky (1990),66 Ohio App.3d 395, 397, 584 N.E.2d 75.
 {¶ 52} In conclusion, we sustain Appellant's first assignment of error, and in doing so, reverse the judgment of the Jefferson County Court of Common Pleas. The Director's Order of August 2, 2001, is reinstated in full. We do not reach Appellant's second assignment of error because it would result in a mere advisory opinion.
DeGenaro, J., concurs.
Vukovich, J., dissents; see dissenting opinion.