**The STATE of Ohio, Appellee,**

v.

**HARR, Appellant.**

[Cite as *State v. Harr* (1992), 81 Ohio App.3d 244.]

Court of Appeals of Ohio,
Medina County.

No. 2009.

Decided Jan. 8, 1992.

*John Lohn,* Prosecuting Attorney, for appellee.

*Richard J. Marco, Sr.,* for appellant.

REECE, Judge.

Defendant-appellant, Linda L. Harr, appeals her conviction for operating a motor vehicle with a suspended driver's license in violation of R.C. 4507.-02(B)(1).

On December 14, 1990, while on patrol, Officer Hanwell of the Medina Police Department observed Harr at a local service station putting gasoline in her automobile. Having responded to prior complaints filed by Harr, Officer Hanwell knew her identity and suspected that her driver's license was under suspension. After confirming through the police dispatcher that her license was in fact suspended, Officer Hanwell stopped Harr after she drove from the service station and onto the public highway.

In response to Officer Hanwell's questions, Harr explained that she was driving to a nearby restaurant to meet two friends, Claude Burton and (Kern) Hampton. She said that Burton had telephoned her at home and asked her to come quickly because Hampton was in trouble. Officer Hanwell agreed to follow Harr as she drove the short distance to the restaurant. When they

arrived neither of Harr's two friends was there. Officer Hanwell proceeded to cite Harr for driving under a suspended license.

At trial, Burton was called to testify in Harr's defense. He corroborated Harr's testimony that he had called for her help because he was afraid that Hampton was overdosing on cocaine. He explained that while telephoning Harr from inside the restaurant, Hampton had wandered off and that was the reason they were not at the restaurant when Officer Hanwell and Harr arrived.

The parties stipulated at trial that Harr's license was under suspension on December 14, 1990. Harr raised the affirmative defense of necessity pursuant to R.C. 4507.02(E), claiming that she drove in response to an emergency. She appeals the jury's guilty verdict raising five assignments of error.

### Assignment of Error I

"The trial court erred when it overruled defendant-appellant's motion to dismiss on the grounds that her statutory right to a speedy trial had been violated."

Harr contends that she was not brought to trial within the time restraints imposed by R.C. 2945.71, and therefore the court erred in not granting her motion to dismiss the case.

R.C. 2945.71(B)(2) mandates that a person charged with a first or second degree misdemeanor be brought to trial within ninety days of his arrest or summons. However, R.C. 2945.72 enumerates those circumstances in which an extension in this time limit is permitted and not chargeable to the time between arrest and the start of trial. See *Akron v. Couchois* (July 18, 1990), Summit App. No. 14415, unreported, at 3–7, 1990 WL 102417.

Harr was cited for driving under a suspended license on December 4, 1990. Her trial was originally set to begin on February 14, 1991, but was continued because another case proceeded to jury trial on that date. The court, *sua sponte*, rescheduled Harr's trial for April 16, 1991, which was one hundred twenty-three days after she was cited, and thirty-three days past the speedy trial requirements. Because no portion of the one hundred twenty-three days is chargeable to Harr in causing the delay, the only issue is whether the delay was excusable under any other provision of R.C. 2945.72.

In *State v. Lee* (1976), 48 Ohio St.2d 208, 2 O.O.3d 392, 357 N.E.2d 1095, the Ohio Supreme Court recognized a trial court's crowded docket as a reasonable basis necessitating a continuance under R.C. 2945.72(H). Since *Lee*, the court has held that a trial court's *sua sponte* continuance beyond the statutory time limits is not a basis for dismissal if the "trial record affirmatively demonstrates the necessity for a continuance and the reasonableness

thereof." *Aurora v. Patrick* (1980), 61 Ohio St.2d 107, 109, 15 O.O.3d 150, 151, 399 N.E.2d 1220, 1221. In order for the continuance to fall within the ambit of R.C. 2945.72(H), the trial court must: (1) record the continuance through its journal entry prior to the expiration of the speedy trial requirements, (2) identify the party to be charged with the continuance, and (3) briefly indicate the reasons requiring the continuance. *State v. Reuschling* (1986), 30 Ohio App.3d 81, 82–83, 30 OBR 138, 139, 506 N.E.2d 558, 559. See, also, *State v. Mincy* (1982), 2 Ohio St.3d 6, 2 OBR 282, 441 N.E.2d 571.

■ In the present case, the trial court's journal entry dated February 14, 1991, satisfied all of these requirements. The court's entry gave as the basis of the delay "a previously scheduled case * * * went forward to a jury." The entry stated that the continuance was not chargeable to Harr and ordered the case "reset as the number one jury trial on the next available open jury date."

Harr argues the court's journal entry did not adequately demonstrate the reasonableness of the continuance. She claims that rescheduling the case for the next open jury date is unreasonable unless the court demonstrates that a sooner date, as a result of later changes in the court's docket, is not available. This claim is without merit. The court cannot anticipate future changes in its docket and then be expected to journalize a record of whether any changes have in fact occurred. We find nothing inherently unreasonable in using the next open trial date as the length of the continuance. Whether it is in fact unreasonable depends on the "peculiar facts and circumstances" of each case. *State v. Saffell* (1988), 35 Ohio St.3d 90, 91, 518 N.E.2d 934, 935. In this case Harr has not demonstrated any prejudice resulting from the court's continuance, and we find the purpose and necessity for the delay were reasonable.

Harr's first assignment of error is overruled.

### Assignments of Error II and III

"II. The trial court erred when it overruled defendant-appellant's objection to improper comments made by the prosecuting attorney during final argument.

"III. The trial court erred in its charge to the jury."

■ In her defense Harr claimed that she drove under a suspended driver's license in response to an emergency situation and therefore her conduct is excused pursuant to R.C. 4507.02(E), which states:

"It is an affirmative defense to any prosecution brought pursuant to division (B), (C), or (D) of this section that the alleged offender drove under suspension or in violation of a restriction because of a substantial emergency,

provided that no other person was reasonably available to drive in response to the emergency."

In raising this necessity defense, the accused has the burden of proving by a preponderance of the evidence that: (1) there was a "substantial emergency," and (2) the urgency of the circumstances made it necessary for him to drive at the time and place in question because no other driver was available. See *Oregon v. Haley* (1983), 64 Ore.App. 209, 211–212, 667 P.2d 560, 561–562.

The issue presented by Harr is what standard should be adopted in determining what constitutes a "substantial emergency" as used in the first part of this defense. In closing argument the prosecution used an objective standard, defining an emergency in terms of what a reasonable person would believe to be an emergency. The court in its jury instruction went further, and defined a "substantial emergency" as "a real and then existing unforeseen combination of circumstances that call for immediate action."

Harr argues that this instruction incorrectly placed a burden on her to prove that the emergency was, in hindsight, real. She claims the jury was thus directed to reject her affirmative defense unless it found from the evidence that an actual emergency existed. Harr analogizes the affirmative defense provided under R.C. 4507.02(E) to self-defense, contending that the correct standard is a subjective one. She asserts that the jury should have been instructed to decide, based on the evidence, whether she sincerely believed an emergency existed.

We disagree with Harr's interpretation of this statute and her attempt to analogize two completely different defenses. The affirmative defense of self-defense is applicable to specific intent crimes, in which the defense, once established, negates the purposefulness of the defendant's actions in causing the harm. Under such circumstances the honesty of the accused's belief that he is threatened with imminent harm, coupled with the reasonableness of that belief for a person with similar mental and physical capacities, is decisive in determining the accused's intent. See *State v. Cope* (1946), 78 Ohio App. 429, 436–437, 34 O.O. 171, 174, 67 N.E.2d 912, 916; 28 Ohio Jurisprudence 3d (1981) 270–271, 345–346, Criminal Law, Sections 1740 and 1817.

In contrast, this offense, R.C. 4507.02(B)(1), is a strict liability crime. When a statute reads, "no person shall * * *" commit the proscribed conduct, absent any reference to the required mental state of the accused, the statute indicates a legislative intent to impose strict liability for the commission of the prohibited act. *State v. Cheraso* (1988), 43 Ohio App.3d 221, 223, 540 N.E.2d 326, 328–329. R.C. 2901.21(B). Therefore, unlike self-defense, the defense of necessity provided by R.C. 4507.02(E) does not negate any required culpable mental state as an element of the crime. Instead, this defense provides the

only exception to the strict liability imposed for driving with a suspended license. Presumably the defense exists because the legislature recognized that under certain circumstances it is preferable to permit a person to drive in response to an emergency, such as an auto accident, than to refrain from driving because of the suspension.

In creating this exception to an otherwise strict liability offense, the legislature set forth the condition that the emergency be "substantial." "Substantial" is defined as "[b]elonging to substance; actually existing; real; * * * true; veritable." Black's Law Dictionary (6 Ed.1990) 1428. By legislative decree, words and phrases shall be construed according to their common usage. R.C. 1.42. Regardless of the policy implications, plain and unambiguous language may not be ignored. *Bd. of Edn. v. Fulton Cty. Budget Comm.* (1975), 41 Ohio St.2d 147, 156, 70 O.O.2d 300, 305, 324 N.E.2d 566, 571. Accordingly, we find, in using the words "substantial emergency," the legislature expressed an intent that the necessity defense for driving under a restricted license be available only when the emergency exists in fact. Additionally, this construction conforms with the legislative intent to impose strict liability for the offenses listed in R.C. 4507.02. Accepting Harr's position, basing the defense on the sincerity of the accused's belief that an actual emergency exists, runs the risk that the prohibited conduct might be swallowed up by the exception.

Therefore, the correct definition of "substantial emergency" is those unforeseen combination of factors which exist in fact and which a reasonable person would perceive as an emergency requiring an immediate response. The second part of the necessity defense still requires the accused to present evidence that no other person was available to drive in response to the emergency. That is lacking in this case.

Based on the foregoing analysis, there was no error in the prosecutor's closing statement or in the jury instructions. Harr's second and third assignments of error are overruled.

### Assignments of Error IV and V

"IV. The jury's verdict is against the manifest weight of the evidence.

"V. The trial court erred when it overruled appellant's Crim.R. 29 motions for a judgment of acquittal made at the end of the state's case and at the end of all the evidence."

In her last two assignments of error, Harr urges us to find that the jury verdict was against the manifest weight of the evidence. From the outset it should be realized that there is no question that the state presented sufficient credible evidence supporting Harr's conviction. It was stipulated

that Harr's driver's license was under suspension, and the evidence was uncontroverted that she did drive. The only issue was whether Harr made out her defense of necessity by a preponderance of the evidence.

A manifest-weight argument requires the reviewing court to weight the evidence in total and decide whether the jury's verdict was clearly erroneous. *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652, 661.

"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720.

In reviewing the evidence we fail to find that the jury "lost its way" in rejecting Harr's necessity defense. Harr failed to establish an essential element of her defense, that her driving was the only means available in responding to the perceived emergency. Additionally, the evidence demonstrated that not only was there no actual emergency, but that there was no sense of urgency on Harr's part in responding to the emergency. After being summoned by her friend, Harr stopped approximately one-half mile from her destination to put gas in her car. In total, the evidence supports the jury's verdict in rejecting Harr's defense.

The fifth and sixth assignments of error are overruled.

Having overruled all of Harr's assignments of error, the judgment of the trial court is affirmed.

*Judgment affirmed.*

CACIOPPO, J., concurs.

QUILLIN, P.J., concurs in judgment only.