The STATE of Ohio, Appellee,

v.

SHAFFER, Appellant.

[Cite as *State v. Shaffer* (1996), 114 Ohio App.3d 97.]

Court of Appeals of Ohio,
Third District, Hardin County.

No. 6–95–23.

Decided Sept. 16, 1996.

98

*Garrett T. Gall,* Auglaize County Prosecuting Attorney, and *Amy Otley Fox,* Assistant Prosecuting Attorney, for appellee.

*S. Mark Weller,* Assistant Public Defender, and *John A. Bay,* Senior State Public Defender, for appellant.

---

THOMAS F. BRYANT, Judge.

This is an appeal by Michael Shaffer from a judgment of conviction and sentence entered in the Hardin County Court of Common Pleas, following a jury verdict finding appellant guilty of securing writings by deception, aggravated theft, and two unclassified felonies relating to the operation and maintenance of appellant's cemeteries.

In 1990, appellant sought to establish a cemetery management company. With the help of his sister, Debra Kelly, appellant was able to secure a loan to purchase Resthaven Memory Gardens in Auglaize County and Mercer Memorial Gardens in Mercer County. Appellant paid a $118,000 down payment and used his automobile, boat, and parent's residence as collateral to secure the loan. Once the cemeteries were purchased, appellant established a corporation, M & L Cemetery Association, to manage the operations of the cemeteries. Appellant and his wife, Lisa Shaffer, served as officers of this corporation, and Debra Kelly served as the sales manager.

In 1992, appellant was convicted of federal drug charges. During the investigation of these charges, the United States District Attorney discovered that the $118,000 used for the down payment on the cemeteries was proceeds from illegal drug sales. To avoid the forfeiture of the cemeteries and foreclosure of his parents' residence, appellant agreed to forfeit these drug proceeds. Appellant then liquidated M & L Cemeteries' perpetual care and endowment trust funds and transferred the funds totaling $145,076.78 into his bank and withdrew $118,000 via cashier's check.

During its investigation, the Mercer County Prosecutor's Office learned that appellant had stolen funds from his corporation to pay his debt to the federal government. Further, it was discovered that appellant and his wife had failed to deposit "pre-need" burial vault contract funds in a financial institution as required by law.

On March 22, 1995, the Auglaize County Grand Jury returned a six-count indictment against Michael Shaffer. However, prior to trial, Count One, engaging in a pattern of corrupt activity, was dismissed due to legal insufficiency. After the indictment, Lisa left appellant, and the parties thereafter lived apart. While cooperating with the police, Lisa made tape recordings of conversations between herself and her estranged husband which were eventually used at trial.

On August 15, 1995, the trial court consolidated this case for trial with those of appellant's codefendants, Lisa Shaffer, Marguerite Polk, and Lowell Polk. The Polks pled guilty before the trial commenced, and Michael and Lisa were tried jointly before a jury in the Court of Common Pleas of Hardin County, pursuant to the court's *sua sponte* change of venue. The jury found appellant guilty on all remaining counts. It is from this judgment and conviction that appellant asserts three assignments of error.

Appellant's first assignment of error reads:

"The trial court erred by prohibiting the cross-examination of a prosecution witness concerning the dismissal of her indictment without prejudice in violation of appellant's right to confront witnesses against him as guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution."

■ Appellant's sister, Debra Kelly, was a key prosecution witness. Defense counsel sought to cross-examine her regarding the dismissal of Count One of the indictment against her charging a pattern of corrupt activities in violation of R.C. 2923.32(A)(1). The court sustained the prosecution's objection and prohibited cross-examination of Ms. Kelly on this matter. Appellant argues that because he was unable to cross-examine Debra Kelly regarding the dismissal of this count

and her possible bias or improper motive to testify, his constitutional rights were violated.

Appellant's argument has no merit. The charge of violating R.C. 2923.32(A)(1) was dismissed for insufficiency for all defendants in this case, including appellant. The dismissal was pursuant to no bargain. All parties were treated the same. No consideration was exchanged for the dismissal. Therefore, no bias of the party dismissed may be inferred. Appellant's first assignment of error is overruled.

In appellant's second assignment of error, he argues:

"The trial court erred by admitting into evidence a tape recorded conversation between co-defendants, Michael and Lisa Shaffer, who were husband and wife at the time."

In support of this assignment, appellant raises three issues. The first is that Lisa was not competent to testify because she was his spouse at the time of the conversation in question. Evid.R. 601 states that "[e]very person is competent to be a witness except: * * * (B) a spouse testifying against the other spouse charged with a crime except when * * * (2) the testifying spouse elects to testify." In this case, Lisa took the stand of her own free will. She also recorded the phone conversations voluntarily. Thus, the record supports the conclusion that Lisa elected to testify against Michael and is competent to do so.

The second issue appellant raises is that the tape was of a privileged communication and is thus inadmissible. R.C. 2317.02 states that a husband or wife shall not testify "concerning any communication made by one to the other * * * unless the communication was made * * * in the known presence or hearing of a third person competent to be a witness." R.C. 2317.02(D). In order for the spouse to claim privilege, the communication must have been made during the marriage. R.C. 2945.42. Furthermore, the spouses must be living as husband and wife in order for the privilege to apply. *Bentleyville v. Pisani* (1995), 100 Ohio App.3d 515, 654 N.E.2d 394. "Where evidence shows that incidents of coverture have been relinquished, no legitimate purpose would be served by the exclusion of spousal testimony." *Id.* at 518, 654 N.E.2d at 396.

From the facts in the record, it is apparent that Lisa and Michael were still legally married but were separated and living apart. Since the parties were not living in coverture at the time Lisa taped the phone conversations, the spousal privilege does not apply. Therefore, the content of the tapes was not privileged communication and is thus admissible.

The final issue appellant raised was that the content of the tapes should have been excluded as prejudicial. Evid.R. 403 states that relevant evidence is

not admissible if its probative value is substantially outweighed by the danger of unfair prejudice. Determining whether the probative value of evidence is substantially outweighed by the prejudice to the defendant is a matter for the trial court. *State v. Lewis* (1992), 78 Ohio App.3d 518, 605 N.E.2d 451. A reviewing court will not disturb the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Retherford* (1994), 93 Ohio App.3d 586, 639 N.E.2d 498.

When extrinsic evidence of a prior inconsistent statement is offered into evidence, a foundation must be established through direct or cross-examination in which (1) the witness is presented with the former statement; (2) the witness is asked whether he made the statement; (3) the witness is given an opportunity to admit, deny, or explain the statement; and (4) the opposition party is given an opportunity to interrogate the witness on the inconsistent statement. *State v. Theuring* (1988), 46 Ohio App.3d 152, 546 N.E.2d 436. The decision whether to admit a prior inconsistent statement which is collateral to the issue being tried and pertinent to the credibility of a witness is a matter within the sound discretion of the trial judge. *State v. Cornett* (1992), 82 Ohio App.3d 624, 612 N.E.2d 1275.

In this case, Lisa had denied her presence at the meeting. The tape was being used for the purpose of impeaching her testimony. Thus the trial court did not abuse its discretion in admitting the portion of the tape for impeachment purposes. Appellant's second assignment of error is overruled.

In his third assignment of error, appellant argues:

"The trial court erred by instructing the jury that operating a cemetery in Ohio without establishing and maintaining an endowment care fund is a strict liability offense and violated appellant's right to due process and a fair trial as guaranteed by Article I, Section 16 of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution."

R.C. 1721.21(B) provides:

"No person shall operate or continue to operate any cemetery in Ohio unless an endowment care fund is established and maintained as required by this section."

Appellant argues that since the language of the statute contains no element of mental culpability and since the legislature did not plainly indicate an intent to impose strict liability, the court erred by instructing the jury that the R.C. 1721.21(B) is a strict liability offense.

Generally, strict liability attaches to criminal offenses which are regulatory in nature and which are designed to protect the health, safety, and well-being of the community. *State v. Buehler Food Markets, Inc.* (1989), 50

Ohio App.3d 29, 30, 552 N.E.2d 680, 681–682. Furthermore, when a statute reads "no person shall" engage in proscribed conduct, absent any reference to a culpable mental state, the statute indicates a legislative intent to impose strict liability. *State v. Cheraso* (1988), 43 Ohio App.3d 221, 223, 540 N.E.2d 326, 328–329. See, also, *State v. Harr* (1992), 81 Ohio App.3d 244, 249, 610 N.E.2d 1049, 1052–1053.

The offense of operating a cemetery without an endowment care fund under R.C. 1721.21(B) constitutes a violation of Ohio's Cemetery Associations Services Act, which regulates companies incorporated for cemetery purposes. Licensing and regulatory provisions such as these, which invoke the state's police power and protect the public health, safety, and well-being, typically involve acts which are *mala prohibita* and are enforced irrespective of guilty intent. *Middletown v. Campbell* (1990), 69 Ohio App.3d 411, 590 N.E.2d 1301; *Morissette v. United States* (1952), 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288. In *State v. Buehler Food Markets, supra,* 50 Ohio App.3d at 30, 552 N.E.2d at 682, the court observed:

"The more serious the consequences are to the public, the more likely the legislature meant to impose liability without fault. For example, the offenses created primarily for the purpose of singling out individual wrongdoers for punishment and correction are the ones commonly requiring mens rea. Police offenses, merely regulatory in nature, are frequently enforced irrespective of any guilty intent. Sayre, Public Welfare Offenses (1933), 33 Colum.L.Rev. 55, 72."

 We conclude that R.C. 1721.21(B) falls into the category of public welfare offenses the purpose of which is to protect and promote the general welfare of the community, irrespective of the mental state of the defendant. Strict liability is appropriate to effectuate the purpose of this statute. The failure to specify any culpable mental state in this *mala prohibita* offense, along with use of the format "no person shall," absent any reference to culpability, is clearly indicative of a legislative intent to impose strict liability. We therefore see no error in the trial court's jury instructions imposing strict liability. Accordingly, appellant's third assignment of error is overruled.

*Judgment affirmed.*

HADLEY, P.J., and SHAW, J., concur.