OPINION
Defendant-Appellant, Scott L. Bowersmith ("Bowersmith"), appeals from a judgment of conviction and sentence entered by the Marysville Municipal Court finding him guilty of failing to carry and display a special deer permit while hunting upon the lands of another, a fourth degree misdemeanor in violation of R.C. 1533.11(A). Bowersmith argues that R.C. 1533.11(A) does not provide a plain indication of an intention to impose strict liability for the offense and that the trial court should have applied the culpable mental state of recklessness to his conduct, pursuant to R.C. 2901.21(B). We find, based upon the nature of the regulation, the inclusion of scienter requirements within other sections of the chapter, and the fact that the offense herein is mala prohibita, that the unconditional mandates within and exclusion of a scienter requirement from R.C. 1533.11 plainly indicate a purpose to impose strict liability for the offense. Therefore, we affirm the conviction.
Facts and procedural history relevant to issues raised on appeal are as follows. On November 26, 2001, Bowersmith was hunting in a field with permission from an out-of-state owner. He began hunting at daylight, took a lunch break, and resumed hunting in the early afternoon. Sometime thereafter, he was approached by Ryan Peterson, a Union County game warden, who requested that he produce a hunting license. Although Bowersmith had been issued a valid license, he was not carrying it on his person and had left it in his truck, which was located approximately two to three miles away. Bowersmith was issued a citation for failing to carry and display his special deer permit while hunting upon the lands of another, despite the subsequent retrieval and display of the license to the warden.
On December 17, 2001, the matter was heard upon a bench trial in the Marysville Municipal Court. Bowersmith moved for acquittal, arguing that R.C. 1533.11(A) was not a strict liability offense and that there had been no showing that he had acted recklessly. Finding that the provision imposed strict liability offense, the trial court entered a guilty verdict and ordered him to pay a seventy-five dollar fine and costs. The instant appeal followed, with Bowersmith presenting the following single assignment of error for our consideration:
 "Whether during proceedings for an alleged violation of hunting without a valid special deer permit in violation of O.R.C. § 1533.11 the trial court abused its discretion by failing to apply the correct mens rea requirement."
Within the assigned error, Bowersmith argues that R.C. 1533.11(A) does not provide a plain indication of an intention to impose strict liability for failing to carry and display one's special deer permit while hunting on the lands of another and that the trial court should have applied the culpable mental state of recklessness to his conduct, pursuant to R.C.2901.21(B). In response, the State argues that a proper reading of R.C. 1533.11(A) demonstrates the General Assembly's clear intent to impose strict liability for the offense.
It is undisputed that the General Assembly can specify the mental element required for each element of an offense.[1] However, where no degree of culpability is specified, R.C. 2901.21 sets forth guidelines for determining whether the section imposes strict liability or whether the mental state of recklessness should be applied, providing as follows:
 "(B) When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense.
"* * *
"(D) As used in this section:
"* * *
 "(3) `Culpability' means purpose, knowledge, recklessness, or negligence, as defined in section 2901.22
of the Revised Code."
Accordingly, "a court must be able to answer in the negative the following two questions before applying the element of recklessness pursuant to R.C. 2901.21(B): (1) does the section defining an offense specify any degree of culpability, and (2) does the section plainly indicate a purpose to impose strict criminal liability?"[2]
In determining whether R.C. 2901.21(B) can operate to supply the mental element of recklessness to R.C. 1533.11(A), we need to determine whether the entire section includes a mental element, not just whether division (A) includes such an element.[3] A reading of R.C. 1533.11
demonstrates that there is no specified degree of culpability. Therefore, our inquiry is limited to whether the statute plainly indicates a purpose to impose strict liability.
We first consider the words of the statute to determine legislative intent.[4] In determining legislative intent, our duty is "to give effect to the words used, not to delete words used or to insert words not used."[5] In determining whether the General Assembly meant to impose strict liability we look to the nature of the regulation;[6] whether the offense is mala prohibita, i.e., the acts are made unlawful for the good of the public welfare regardless of the offender's state of mind;[7]
whether varying degrees of culpability have been provided for different elements of the violation or other violations within the section;[8]
and whether the General Assembly has assumed a strong stance against similar acts, as evidenced by other statutes in the Ohio Revised Code providing criminal liability for those acts.[9]
Turning to the text of R.C. 1533.11, the language under which Bowersmith was charged states:
 "Every person, while hunting deer or wild turkey on lands of another, shall carry the person's special deer or wild turkey permit and exhibit it to any enforcement officer so requesting. Failure to so carry and exhibit such a permit constitutes an offense under this section."[10]
Several appellate courts, including this Court, have found that when a statute includes the comprehensively prohibitive language that "`no person shall' engage in proscribed conduct, absent any reference to a culpable mental state, the statute indicates a legislative intent to impose strict liability."[11] This alone, however, is not sufficient to support a finding that the statute provides a plain indication of a purpose to impose strict liability; as discussed above, one must look to other indicia of such purpose.[12] In this instance, the General Assembly has expressed the unconditional requirement that "every person * * * shall" carry and exhibit their permit, which is then buttressed by the unqualified statement that the "[f]ailure to so carry and exhibit such a permit constitutes an offense under this section." This unequivocally affirmative mandate and the absence of any reference to a culpable mental state within the section provide preliminary indicia of an intent to impose strict liability. Beyond this, it is necessary to also examine other indications outside the statute to determine whether the language at issue can reasonably be presumed to be a plain indication of an intent to impose strict liability.[13]
"The legislature, in enacting laws in furtherance of the public health, safety and welfare, may impose strict liability for certain conduct, excluding from the statutory language elements of scienter or guilty knowledge."[14] "Generally, strict liability attaches to criminal offenses which are regulatory in nature and which are designed to protect the health, safety, and well-being of the community."[15]
It has been recognized that Ohio's wildlife laws were enacted pursuant to the state's police powers as a means for the protection and preservation of wild animals, a natural state resource, for the benefit of the citizens of the state.[16] "Licensing and regulatory provisions such as these, which invoke the state's police power and protect the public health, safety, and well-being, typically involve acts which are malaprohibita and are enforced irrespective of guilty intent."[17]
A review of the General Assembly's regulation of natural resources and protection of the environment throughout the Code and other sections within Chapter 1533 providing criminal liability for similar acts[18]
indicates that the General Assembly has assumed a strong stance in support of the protection and preservation of our natural resources through stringent licensing and regulation of activities affecting those resources. Moreover, varying degrees of culpability and exceptions for unintentional violations have been provided within other sections of the Chapter.[19] Therefore, it is reasonable to presume, based upon the fact that this is a regulatory statute enacted in furtherance of the public welfare and that the offense herein is mala prohibita, that the inclusion of scienter requirements and exceptions within other sections of the Chapter and the unconditional mandates within and exclusion of a scienter requirement from R.C. 1533.11, plainly indicate a purpose to impose strict liability for failing to carry and display a special permit while hunting upon the lands of another.[20] Accordingly, Bowersmith's assignment of error is overruled.
Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, the judgment of the trial court is hereby affirmed.
Judgment affirmed.
SHAW, P.J. and HADLEY, J. concur.
[1] State v. Jordan (2000), 89 Ohio St.3d 488, 493, 1999-Ohio-1668,733 N.E.2d 601.
[2] State v. Maxwell (2002), 95 Ohio St.3d 254, 256, 2002-Ohio-2121 at ¶ 21, 767 N.E.2d 242.
[3] Id. at ¶ 22.
[4] Id. at ¶ 10.
[5] Id., citing Columbus-Suburban Coach Lines, Inc. v. Pub. Util.Comm. (1969), 20 Ohio St.2d 125, 127, 49 O.O.2d 445, 254 N.E.2d 8.
[6] State v. Schlosser (1997), 79 Ohio St.3d 329, 333, 681 N.E.2d 911,914; State v. Schaffer (1996), 114 Ohio App.3d 97, 103, 682 N.E.2d 1040,1044.
[7] Id.
[8] State v. Wac (1981), 68 Ohio St.2d 84, 86, 22 O.O.3d 299,428 N.E.2d 428; Maxwell, at ¶ 29-30.
[9] Maxwell, at ¶ 30.
[10] Emphasis added.
[11] Shaffer, 114 Ohio App.3d at 103, 682 N.E.2d at 1044; Village ofGates Mills v. Welsh (2001), 146 Ohio App.3d 368, 373, 766 N.E.2d 204,207; State v. Cheraso (1988), 43 Ohio App.3d 221, 223, 540 N.E.2d 326,328-329.
[12] State v. Collins (2000), 89 Ohio St.3d 524, 530, 1999-Ohio-1146,733 N.E.2d 1118, 1124; State v. McGee (1997), 79 Ohio St.3d 193, 1996-Ohio-0210, 680 N.E.2d 975.
[13] See, Maxwell, at ¶ 30.
[14] State v. Borges (1983), 10 Ohio App.3d 158, 159-160,460 N.E.2d 1147, 1148, citing United States v. Balint (1922), 258 U.S. 250,252-253, 42 S.Ct. 301, 66 L.Ed. 604.
[15] Shaffer, 114 Ohio App.3d at 102-102, 682 N.E.2d at 1044, citingState v. Buehler Food Markets, Inc. (1989), 50 Ohio App.3d 29, 30,552 N.E.2d 680, 681-682.
[16] Borges, 10 Ohio App.3d at 160, 460 N.E.2d at 1148, citingState v. Saurman (1980), 64 Ohio St.2d 137, 138, 413 N.E.2d 1197,1199.
[17] Shaffer, 114 Ohio App.3d at 103, 682 N.E.2d at 1044, citingMiddletown v. Campbell (1990), 69 Ohio App.3d 411, 590 N.E.2d 1301, andMorissette v. United States (1952), 342 U.S. 246, 72 S.Ct. 240,96 L.Ed. 288; see, also, Buehler Food Markets, 50 Ohio App.3d at 30,552 N.E.2d at 682.
[18] See, e.g., R.C. 1533.111, 1533.112, 1533.14, 1533.17, and1533.32.
[19] See, e.g., R.C. 1533.03, 1533.031, 1533.101, and 1533.37.
[20] Cf. State v. Hymore (Sept. 30, 1996), Lucas App. No. L-95-361;State v. Kendrick (Sept. 30, 1996), Lucas App. No. L-95-381; Koch v. OhioDept. of Natural Resources (1994), 95 Ohio App.3d 193, 197, 642 N.E.2d 27;State v. Osborne (July 23, 1984), Hocking App. Nos. 392, 393; State v.Port Clinton Fisheries Co. (Aug. 19, 1983), Ottawa App. No. OT-83-17;Dept. of Natural Resources v. Borges (Feb. 25, 1983), Erie App. No. E-82-40; Borges, supra, 10 Ohio App.3d at 159-160,460 N.E.2d at 1148-1149.