[Cite as *Cleveland v. Hero Homes JV2, L.L.C.*, 2025-Ohio-4585.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF CLEVELAND,                    :

    Plaintiff-Appellee,             :

                              Nos. 114561 and 114800

    v.                                           :

HERO HOMES JV2 LLC,                   :

    Defendant-Appellant.            :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; VACATED IN PART;
                    MODIFIED IN PART; AND REMANDED
**RELEASED AND JOURNALIZED:** October 2, 2025

---

Criminal Appeal from the Cleveland Municipal Court
Housing Division
Case No. 2024-CRB-001895

---

### *Appearances:*

Mark D. Griffin, Cleveland Director of Law, and Michael
A. Glazer, Assistant Director of Law, *for appellee.*

Powers Friedman Linn, PLL, Robert G. Friedman,
Thomas P. Owen, and Rachel E. Cohen, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} In this consolidated appeal, defendant-appellant Hero Homes JV2 LLC ("Hero Homes") appeals its convictions, sentence, and subsequent finding that it violated community control. Finding some merit to the appeal, this court affirms

the housing court's finding of guilt, but modifies the sentence by vacating the period of community control and reducing the total fine to $100.

## I.  Procedural History and Factual Background

{¶ 2}  On March 14, 2024, the City of Cleveland ("the City") filed a 25-count complaint against Hero Homes, alleging that Hero Homes violated Cleveland Cod.Ord. ("CCO") 367.131 by purchasing real property located in Cleveland without filing articles of incorporation or organization and identifying a statutory agent or without being licensed by the Ohio Secretary of State and identifying a statutory agent in accordance with Ohio law.  Even though Hero Homes only committed one violation, CCO 367.131 permits the violation to apply to each property purchased during the noncompliance period.  Accordingly, because Hero Homes purchased 25 properties during a bulk-sale real estate transaction on September 25, 2023, the City charged Hero Homes with 25 separate violations, each identifying the specific property associated with each specific count.

{¶ 3}  As of March 27, 2024, and prior to being served with the complaint, Hero Homes filed the requisite documentation with the Ohio Secretary of State and appointed a statutory agent, thus complying with CCO 367.131.

{¶ 4}  On September 11, 2024, Hero Homes appeared at a change-of-plea hearing.  The City explained to the housing court that the failure to register with the secretary of state was not intentional but a result of assurances by the real estate broker facilitating the bulk sale that all laws were being followed.  Accordingly, the City and Hero Homes entered into a plea agreement whereby Hero Homes would

plead no contest to one count of the complaint, with the City dismissing the remaining counts. The housing court rejected the plea deal, stating, "I don't want to go into the details — I'm going to — I can tell you, the Court is not willing to adhere to or allow a plea of [one] count, 25 counts when there's 25 separate properties." (Sept. 11, 2024 hearing, tr. 7.) Following a brief recess, the City advised the court that Hero Homes agreed to plead no contest to four counts of the complaint — the housing court allowed this plea agreement.

{¶ 5} During the plea colloquy, both parties advised the court that as of March 27, 2024, Hero Homes was in compliance with CCO 367.131. Nevertheless, the housing court continued the matter for sentencing and informed Hero Homes that the case "is going to definitely be assigned to my compliance officer or compliance officer in training, but it's going to the chief." (Sept. 11, 2024 hearing, tr. 16.) The court placed no restrictions on Hero Homes pending sentencing other than to cooperate with the compliance officer.

{¶ 6} On October 17, 2024, Hero Homes appeared for sentencing. The housing court took testimony from a housing court specialist who offered information about the four properties associated with the four counts of the complaint to which Hero Homes pleaded no contest. The information included the type of property, its condition, whether it was vacant, whether the taxes were paid, whether any open violation notices, permits, or certificates were on file, and whether a rental registration was obtained. The specialist confirmed that Hero Homes registered with the secretary of state on March 27, 2024. The specialist then

reported the same information about all the properties Hero Homes owned, testifying that it conducted site visits and noted the condition of those properties.

{¶ 7} Following the presentation of information by all parties, the housing court announced its sentence and placed Hero Homes on active community control for two years, expiring October 17, 2026, and imposed a $20,000 fine that it stayed pending compliance with the court's community-control order. The court then discussed each property owned by Hero Homes, identified the concerns Hero Homes needed to address, and ordered cooperation with the housing specialist and compliance with all laws, and "verbally" prohibited any transfer or sale of real property without permission by the court.

{¶ 8} The housing court reduced its sentence to writing, setting forth at least 20 enumerated community-control conditions involving multiple properties owned by Hero Homes, including its "verbal" order to not sell or transfer any property without court approval. Although the court included a blanket order to follow all community-control conditions set forth in the Revised Code and the court's local rules, none of the community-control conditions pertained to the registration violation to which Hero Homes pleaded no contest and was found guilty. The court scheduled a status conference for January 2025.

{¶ 9} On November 15, 2024, Hero Homes appealed its convictions and sentence and requested a stay pending appeal with the housing court. In a written decision denying Hero Homes' request for a stay, the housing court also imposed additional conditions against Hero Homes. On January 2, 2025, Hero Homes

requested a stay from this court. On January 13, 2025, while the motion was pending, the housing court conducted a status hearing. During the hearing, the court found Hero Homes "guilty and in violation of its community control sanctions," and ordered Hero Homes to pay a $5,000 fine, with the remaining $15,000 stayed. On January 26, 2025, this court granted Hero Homes' motion to stay pending appeal.

## II. The Appeal

{¶ 10} Hero Homes now appeals, raising five assignments of error, which this court will address out of order and together where appropriate.

### A. Finding of Guilt Following a No Contest Plea

{¶ 11} In its first assignment of error, Hero Homes contends that the trial court erred by finding it guilty after the no contest plea because the City offered an insufficient explanation of circumstances. Specifically, it contends that the City did not set forth that Hero Homes acted with the requisite level of culpability, i.e., recklessness, when it failed to register with the secretary of state and name a valid statutory agent. We disagree.

{¶ 12} The mental state of the offender is a part of every criminal offense in Ohio except for those plainly imposing strict liability. R.C. 2901.21(A)(2) requires that, to be found guilty of a criminal offense, a person must have "the requisite degree of culpability for each element as to which a culpable mental state is specified by the language defining the offense." R.C. 2901.21(B) addresses strict liability statutes that do not identify a culpable mental state. "When the language defining

an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense." *State v. Lozier*, 2004-Ohio-732, ¶ 19.

{¶ 13} Hero Homes pleaded no contest and was found guilty of four counts of violating C.C.O. 367.131(a)-(c), which reads, in relevant part:

> No . . . limited-liability company or other business entity, whether domestic or foreign, [or officer thereof] shall buy, own, sell, or transfer real property in the City of Cleveland without filing articles of incorporation and identifying a statutory agent, filing articles of organization and identifying a statutory agent, or being licensed by the Ohio Secretary of State and identifying a statutory agent in accordance with [R.C.] Chapters 1701, 1702, 1703 and 1705.
>
> . . .
>
> Each property bought, owned, sold, or transferred by a business entity that is not in compliance with these requirements is a separate violation.

{¶ 14} Although the ordinance does not specify a degree of culpability, the plain reading of the offense indicates a purpose to impose strict liability. "Generally, strict liability attaches to offenses which are regulatory in nature, and which are designed to protect the health, safety, and well-being of the community." *State v. Buehler Food Markets, Inc.*, 50 Ohio App.3d 29, 30 (9th Dist. 1989). And, when a statute reads "no person shall engage" in certain conduct, and does not reference a culpable mental state, the statute indicates a legislative intent to impose strict liability. *State v. Shaffer*, 114 Ohio App.3d 97, 102-103 (3d Dist. 1996); *see also State v. Gabriel*, 2025-Ohio-2971 (5th Dist.).

{¶ 15} We find that Cleveland City Council intended CCO 367.131 to be a strict liability offense. To be sure, in 2011, council enacted CCO 601.061, which provided at the time of Hero Homes' offense, "Notwithstanding any other section of the Codified Ordinances, when any section of the Building Code or Housing Code defining an offense does not specify any degree of culpability, then strict criminal liability shall apply and culpability is not required for the person to be guilty of the offense."[1]

{¶ 16} This court has previously found that certain housing code sections are strict liability offenses, meaning that to be found guilty of an offense, it must be shown that the party engaged in the course of conduct prohibited by the ordinance; the party's degree of culpability is irrelevant. *Cleveland v. St. Anthony Church*, 2025-Ohio-164 (8th Dist.), and *Cleveland v. Go Invest Wisely, L.L.C.*, 2011-Ohio-3410, ¶ 13 (8th Dist.) (both finding a violation occurs regardless of mental state when the seller of real property fails to furnish the purchaser with the proper certificate of disclosure).

{¶ 17} At the change-of-plea hearing, the City proffered the evidence it would have presented at trial:

> On or about September 25th, 2023, . . . the City of Cleveland Department of Building and Housing discovered that Hero Homes JV2 LLC bought a number of properties in the City of Cleveland, and that

---

[1] Hero Homes' argument that CCO 601.061 was not enacted until 2024 lacks merit. The 2024 amendment added "Health Code and Fire Prevention Code" to the list of strict liability offenses. *See* Ordinance No. 1039-2023, as amended.

includes 17604 Walden, 18206 Kares, 18809 Harvard, and 3788 Lee Heights Boulevard contemplated in the change of plea today.

Before the Court is the warranty deed by which this transfer and the transfer of other properties was accomplished from Goldline Properties LLC to Hero Homes JV2 LLC for consideration, $3.9 million.

. . .

And Your Honor, this is the information [from] the Secretary of State's website . . . indicating that effective March 27th, 2024 — again, months after the exchange or months after the purchase of the properties — that Hero Homes JV2 LLC did get registered with the Secretary of State and named a valid statutory agent.

(Sept. 11, 2024 hearing, tr. 12-13.)

{¶ 18} During the hearing, it was undisputed that Hero Homes was not in compliance with CCO 367.131 when it made the bulk-sale real estate purchase in September 2023. The parties presented to the court that the lack of compliance was not intentional but due to an oversight and in reliance of assertions made by a third party. Nevertheless, the City's explanation of circumstances provided the housing court with sufficient evidence to establish all the elements of the offense. Accordingly, the housing court was presented with relevant information from both parties upon which the court could have legally entered a finding of guilt on Hero Homes' no contest plea.

{¶ 19} Insofar as Hero Homes argues that it was not provided notice to cure, in violation of CCO 367.04, thus rendering the conviction invalid, we find that the argument was not raised with the trial court. Nevertheless, the City correctly noted that the notice and opportunity to cure requirements of CCO 367.04 only pertain to dwelling and structure violations. The same notice requirements are not required

when the violations are registration-based.  This distinction between the types of violations raises an interesting point that we will address later in the opinion when discussing the housing court's imposition of community-control sanctions.

{¶ 20} Based on the foregoing, Hero Homes' first assignment of error is overruled.

### B.  Monetary Fine

{¶ 21}  During the plea hearing, the housing court advised Hero Homes that "[e]ach count, because this is an LLC, is a maximum fine for each count is $5,000, making a total maximum amount of $20,000 the Court could impose and up to five years of community control.  Community control is probation."  (Sept. 11, 2024 hearing, tr. 10.)  At sentencing however, the housing court stated, "Also, there is a possible $20,000 fine this Court could impose.  Because most of your properties are occupied and you are showing an effort towards repairing and paying for rental registration and all those things, I'm going to stay the $20,000 fine as long as you comply with the Court's community control order."  (Oct. 17, 2024 hearing, tr. 48.)  When discussing community-control sanctions and duration, the court again stated, "[Hero Homes] is an organization, the maximum financial sanction this court could still impose is $20,000." *Id*. at tr. 58.  Nevertheless, when journalizing the sentence, the housing court imposed a fine of "$20,000 STAYED" on Count 1 and imposed a fine of "$0" on Counts 2-4.  The court's judgment entry further stated, "The sentence on four (4) counts of Failure to Register shall run concurrently."

{¶ 22} Hero Homes contends in its fifth assignment of error that the municipal court erred in imposing a $20,000 fine on one first-degree misdemeanor offense. We agree.

{¶ 23} R.C. 2929.28 governs the fines a court may impose for misdemeanor offenses, and R.C. 2929.31 increases the amount of the fine if the offender is an organization. In cases involving an organizational entity, where the entity cannot be confined for failure to comply, "the housing court is empowered to tailor the amount of financial sanctions to compel compliance." *Cleveland v. Schornstein Holdings, L.L.C.*, 2016-Ohio-7479, ¶ 19 (8th Dist.); R.C. 2929.31.

{¶ 24} No dispute exists that Hero Homes is an organization under the statute, and the maximum fine a court may impose for a first-degree misdemeanor conviction is $5,000. R.C. 2929.31(A)(8). "Crimes are statutory, as are the penalties therefor, and the only sentence which a trial court may impose is that provided for by statute. A court has no power to substitute a different sentence for that provided for by statute or one that is either greater or lesser than that provided for by law." *Colegrove v. Burns*, 175 Ohio St. 437, 438 (1964).

{¶ 25} Accordingly, although it appears that the housing court may have intended to impose the maximum fine of $5,000 on each count, it imposed the cumulative-maximum fine on one count.[2] Moreover, the trial court, running the

---

[2] This error cannot be corrected nunc pro tunc. "A nunc pro tunc entry reflects what a court 'actually decided, not what the court might or should have decided or what the court intended to decide.'" *State v. Miller*, 2023-Ohio-1141, ¶ 106 (8th Dist.), quoting

sentences "concurrently," does not remedy the error because the court only imposed one monetary fine. The court's fine on Count 1 therefore exceeds the $5,000 legal amount for a first-degree misdemeanor pursuant to R.C. 2929.31(A)(8) and thus is contrary to law.

{¶ 26} Pursuant to R.C. 2953.08(G)(2), this court, upon finding that a sentence is clearly and convincingly contrary to law, "may increase, reduce, or otherwise modify a sentence . . . or may vacate the sentence and remand the matter to the sentencing court for resentencing." *See also State v. Fischer*, 2010-Ohio-6238.

{¶ 27} In *Cleveland v. Aeon Fin., L.L.C.*, 2016-Ohio-4559 (8th Dist.), this court modified a housing court's fine, finding that it was not commensurate with the organization's conduct. In *Aeon*, the parties agreed to a $500 fine that the housing court rejected. Instead, the court imposed the maximum fine of $5,000, ordered the defendant to pay court and demolition costs for two properties, and upon payment of the costs, seek to modify the fine. Despite the payment of those costs, the housing court denied the defendant's request to modify the fine, noting that the defendant's other properties contained other building violations. After reviewing the purposes and principles of misdemeanor sentencing found in R.C. 2929.21 and the relevant statutory factors, the *Aeon* Court found that the maximum fine of $5,000 was not supported by competent, credible evidence and not in accord with

*State v. Wright*, 2019-Ohio-1361, ¶ 18 (8th Dist.). The sentencing transcript provides that the court imposed a maximum fine of $20,000 that was stayed.

the statutory purpose of misdemeanor sentencing because the defendant complied with the court's conditions for that offense. Accordingly, the *Aeon* Court modified the fine to $500. We find the same here.

{¶ 28} "The overriding purposes of misdemeanor sentencing are to protect the public from future crime by the offender and to punish the offender." R.C. 2929.21(A). In sentencing for a misdemeanor, the "court shall consider the impact of the offense upon the victim and the need for changing the offender's behavior, rehabilitating the offender, and making restitution to the victim of the offense, the public, or the victim and the public." *Id.* Misdemeanor sentences "shall be reasonably calculated to achieve the two overriding purposes of misdemeanor sentencing . . ., commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar offenses committed by similar offenders." R.C. 2929.21(B). R.C. 2929.22(B)(1) lists factors that the court shall consider in determining an appropriate misdemeanor sentence. For our review, those relevant factors include the nature and circumstances of the offense and the likelihood of reoffending.

{¶ 29} Hero Homes committed one administrative infraction that affected the bulk sale of 25 properties. This single omission — failing to register with the secretary of state and naming a statutory agent — was not a health or safety concern where the primary goal of the housing code is to bring a specific property in compliance with the building codes. Importantly, Hero Homes remedied this oversight prior to receiving notice of the complaint and before appearing in court.

Moreover, no evidence was presented that Hero Homes had any prior involvement in housing court prior to this offense. Despite Hero Homes' compliance and no prior history, the housing court, without any reasonable justification, refused to accept the initial plea agreement and then imposed a $20,000 fine that it stayed, pending compliance with community control.[3]

{¶ 30} We find that a maximum fine is not commensurate with Hero Homes' conduct. Hero Homes complied with CCO 367.131 prior to receiving service of the complaint and the housing court acknowledged compliance when accepting the no contest plea and during sentencing. Accordingly, we sustain Hero Homes' fifth assignment of error and modify the $20,000 fine on Count 1 to a $100 fine; the housing court did not impose a monetary fine on Counts 2 through 4.

### C. Community-Control Conditions

{¶ 31} Hero Homes contends in its third assignment of error that the municipal court's conditions of community control are unwarranted by law, do not relate to rehabilitation or the underlying offense, are not narrowly tailored, and are overbroad. We agree.

---

[3] This court recognizes that a trial court has discretion whether to accept a plea agreement. In this case, however, the refusal to accept the proposed plea agreement — the City offered Hero Homes to plead to one first-degree misdemeanor count of the complaint — was not based on any specific justification, but merely because the complaint involved 25 properties. As noted, the complaint involved one singular registration violation that applied to 25 properties. It appears to this court that the trial court's refusal to accept the plea agreement was merely to subject Hero Homes to a higher monetary fine. The court's imposition of a $20,000 fine cannot go unnoticed.

{¶ 32} R.C. 2929.25 governs misdemeanor community-control sanctions, which relevant to this appeal, permits a court to directly impose a sentence that consists of one or more community-control sanctions "that is intended to discourage the offender or other persons from committing a similar offense if the sanction is reasonably related to the overriding purposes and principles of misdemeanor sentencing." R.C. 2929.27(C).

{¶ 33} In cases involving building or housing-code violations, "the primary goal of the court is to correct the violation and bring the property into compliance with all building codes, rather than punish the defendant for misconduct." *Cleveland v. Pentagon Realty, L.L.C.*, 2019-Ohio-3775, ¶ 9 (8th Dist.); *Cleveland v. Schornstein Holdings, L.L.C.*, 2016-Ohio-7479, ¶ 19 (8th Dist.); *see also Cleveland v. Southwest Invests. L.L.C.*, 2024-Ohio-1271, ¶ 39 (8th Dist.) (E.T. Gallagher, J., concurring in judgment only). To achieve that goal, the housing court has broad discretion in fashioning a sentence to determine the most effective way to bring about compliance. *Pentagon Realty* at ¶ 10; R.C. 2929.22(A), 2929.25, 2929.27. That discretion, however, is not limitless.

{¶ 34} Generally, a reviewing court will not find an abuse of discretion in the trial court's fashioning of a community-control sanction if the condition is reasonably related to the probationary goals of doing justice, rehabilitating the offender, and ensuring good behavior. *State v. Chapman*, 2020-Ohio-6730, ¶ 8, citing *State v. Talty*, 2004-Ohio-4888, ¶ 12. Further, a condition "'cannot be overly

broad so as to unnecessarily impinge upon the probationer's liberty.'" *Talty* at ¶ 13, quoting *Jones*, 49 Ohio St.3d 51, 52 (1990).

{¶ 35} In *Jones*, the Ohio Supreme Court established a three-part test to assess whether a community-control condition is reasonably related to the goals of community control. A court must "consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation." *Jones* at 53; *See also State v. Chapman*, 2020-Ohio-6730, ¶ 23 (reiterating and applying the *Jones* test); *Cleveland v. GIG6 L.L.C.*, 2021-Ohio-2684 (8th Dist.) (applying the *Jones* test). All three of these factors must be satisfied for the reviewing court to find that the housing court did not abuse its discretion. *Solon v. Boderick*, 2018-Ohio-4900, ¶ 8 (8th Dist.).

{¶ 36} Applying the *Jones* test, we note that it is undisputed that Hero Homes remedied its registration violation prior to being served with the complaint. Accordingly, Hero Homes was in full compliance with CCO 367.131, thus satisfying the primary goal of misdemeanor sentencing. *See Cleveland v. Southwest Invests. LLC*, 2024-Ohio-1271, ¶ 41 (8th Dist.) (E.T. Gallagher, J., concurring in judgment only) (suggesting that when housing code violations are cured prior to sentencing, the purpose of misdemeanor sentencing may be satisfied and thus, the reason for rehabilitation no longer exists). Under the *Jones* test, rehabilitation was no longer necessary, thus the period of community control served no reasonable purpose or

relationship to the offense. Accordingly, this factor is not satisfied and thus does not support the housing court's imposition of any period of community control.

{¶ 37} Next, we look at the conditions of community control and whether they bear some reasonable relationship to the crime that Hero Homes committed. The housing court ordered Hero Homes to serve two years of active community control and imposed at least 18 conditions related to an attached list of 16 properties located in the housing court's jurisdiction. Those conditions included a "verbal order" not to sell, gift, or transfer the properties it owns within Cleveland without approval by the court, and ordered Hero Homes to (1) obtain rental registrations for all properties; (2) comply with the Lead Safe Ordinance; (3) pay all outstanding taxes; (4) clean all properties, keep them free of debris, and cut the grass and remove overgrown vines and shrubbery; (5) remove feral animals, inoperable vehicles, (6) permit both interior and exterior inspections of the houses, garages, and sheds; (7) understand that once the interior and exterior inspections occurred, the court could modify the sentencing and community-control order; (8) abate any violation notices; (9) attend Cleveland Housing Court's Landlord Workshop; (10) submit every 30 days a Maintenance and Repair plan; and (11) remain in communication and cooperate with the assigned housing court specialist. The court further ordered compliance with all general community-control requirements pursuant to the Revised Code and the housing court's local rules and scheduled a status hearing for 90 days.

{¶ 38} Hero Homes was not charged with any building violation regarding a dwelling or structure, but rather charged Hero Homes with violating a registration requirement with the Ohio Secretary of State.[4] As previously stated, Hero Homes committed one registration infraction that affected the bulk sale of 25 properties. This act of omission — failing to register with the secretary of state and naming a statutory agent — was not a health or safety concern given that the primary goal of the housing code is to bring a specific property in compliance with the building codes. The ordered conditions, therefore, demonstrate that the housing court's justification for imposing community control was completely unrelated to Hero Homes' offense because none of the conditions involve continued compliance with the registration requirements under R.C. 367.131. And as Hero Homes noted, a limited liability company remains in good standing unless and until the secretary of state cancels the entity's articles. *See* R.C. 1706.511(E).

{¶ 39} In *Cleveland v. City Redevelopment LLC*, 2024-Ohio-5213 (8th Dist.), this court vacated a community-control condition that prohibited the defendant from selling or transferring any of its properties without court approval

---

[4] When challenging Hero Homes' argument that its convictions were void because the City did not provide notice or an opportunity to cure the registration violation, the City distinguished between violations in dwelling structures and premises, which require the issuance of a notice of violation and an opportunity to cure, and the conduct of buying or selling real property, which does not afford notice or an opportunity to cure. We find the City's argument relevant because it demonstrates that when Cleveland City Council enacted the ordinances, council may have intended to view the two types of violations differently. Accordingly, imposing building and dwelling conditions when only a blanket registration violation occurred may be unjustified.

after finding no correlative connection between the facts supporting the defendant's convictions and the community-control condition. The court noted that at the time of sentencing, the defendant had remedied the building violation, complying with all building and housing codes. *Id.* at ¶ 8. Based on the defendant's compliance, the court found the prohibitive condition served no rehabilitative purpose, was not reasonably related to the goals of community control, and bore no relationship to the underlying offenses charged in the complaint. *Id.* at ¶ 8-11.

{¶ 40} The same applies here. We find that the housing court's overall imposition of a period of community control served no rehabilitative purpose, was not reasonably related to the goals of community control, and bore no relationship to the underlying offense charged in the complaint.

{¶ 41} Because all three prongs of the *Jones* test must be satisfied for this court to uphold the housing court's discretion in imposing community-control conditions, we do not need to address the final factor — whether the community-control condition relates to conduct that is criminal or reasonably related to future criminality and serves the statutory ends of community control. Accordingly, we find the *Jones* reasonable-relationship test is not satisfied, thus demonstrating that the housing court abused its discretion in ordering Hero Homes to serve a period of community control.

{¶ 42} The record suggests that the housing court's decision to place Hero Homes on community control was solely for the purposes of forced code compliance with all Hero Homes' properties without first filing notices of violations, thus

circumventing due process and the notice provisions in CCO 367.04. In *Southwest Invests.*, the separate concurring opinion addressed the concerning trend of overbroad and overreaching community-control conditions that infringe on due process rights and serve merely to punish the offender.

> It is my belief that the [housing court's] local rule and the restrictions imposed against [the defendant's] other properties are not rehabilitative and serve to preemptively circumvent the procedures and policies in place in the building and housing department for ensuring compliance with the applicable statutes and ordinances. If another property owned by [the defendant] was in violation of the local building or housing code, the city was entitled to issue a citation, and if necessary, initiate criminal proceedings after affording [the defendant] due process. Instead, the court held a $50,000 sanction over [the defendant's] head to monitor properties that were not formally cited or directly related to the failure-to-comply convictions.

*Southwest Invests., LLC,* 2024-Ohio-1271, at ¶ 45 (8th Dist.) (E.T. Gallagher, J., concurring in judgment only).

{¶ 43} We are once again presented with the same concerning circumstances, and we note that the passage of local rules or overbroad ordinances cannot bypass due process. *See, e.g., Cleveland v. Lucas*, 2018-Ohio-167, ¶ 6 (8th Dist.) (expressing concern that CCO 367.99 seemingly permits perpetual prosecution with all violations without due process). To this end, we further reiterate the separate concurring opinion in *Cleveland v. Johnson*, 2025-Ohio 1731 (8th Dist.):

> [C]oncerns can be raised that even within a single property identified in the charging instrument, the community-control sanction should be limited to the violation at hand and is not a green light to address uncharged violations where no due process has been afforded the landowner. This practice raises concerns about the separation of

powers where the judicial branch assumes the role of the executive in uncovering new violations through the guise of community-control sanctions and then compelling remediation. Uncovering violations is for the housing inspectors at City Hall, not the judiciary. *State v. Hacker*, 2023-Ohio-2535, ¶ 14, quoting *State ex rel. Dann v. Taft*, 2006-Ohio-1825, ¶ 56 ("The [separation-of-powers] doctrine 'requires that each branch of a government be permitted to exercise its constitutional duties without interference from the other two branches of government.'").

*Id.* at ¶ 29 (S.C. Gallagher, J., concurring).

{¶ 44} Accordingly, we find that the housing court abused its discretion in ordering Hero Homes to serve any term of community control. This court hereby vacates the imposition of community control in its entirety. Moreover, because this court is vacating the imposition of community control, we further vacate any sanction imposed as a result of Hero Homes purportedly violating community control. We sustain Hero Homes' second and fourth assignments of error.

{¶ 45} Finally, our finding that the housing court abused its discretion in imposing a period of community control renders Hero Homes' third assignment of error, challenging the housing court's authority to impose community-control sanctions upon a limited liability company, moot. *See* App.R. 12(A)(1)(c).

## III. Conclusion

{¶ 46} Based on the foregoing, this court affirms the housing court's finding of guilt, but modifies Hero Homes' sentence by vacating the period of community control and reducing the fine on Count 1 to $100.

{¶ 47} Judgment affirmed in part, vacated in part, and remanded for modification of sentence in accordance with this decision.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court, Housing Division, to carry this judgment into execution. The defendant's conviction having been affirmed, in part, any bail pending appeal is terminated. Case remanded to the trial court for modification of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, JUDGE

MARY J. BOYLE, J., CONCURS;
EMANUELLA D. GROVES, P.J., CONCURS IN JUDGMENT ONLY AND DISSENTS IN PART (SEE SEPARATE OPINION)

EMANUELLA D. GROVES, P.J., CONCURRING IN JUDGMENT ONLY AND DISSENTING IN PART:

{¶ 48} Respectfully, I concur in judgment only with the majority opinion and dissent to the portion of the opinion modifying the fine imposed on Count 1. I believe the matter should be remanded for resentencing so that the trial court can utilize its discretion to impose a sentence within the guidelines established by R.C. 2929.28 and 2929.31.