OPINION
{¶ 1} Appellant, Driftwood Properties, Inc. ("Driftwood"), appeals the judgment entered by the Lake County Court of Common Pleas. In an administrative appeal, the trial court reversed the decision of the Lake County Planning Commission ("Planning Commission"). In addition, appellee, Eye-Will Development, Inc. ("Eye-Will"), has filed a cross-appeal of the trial court's judgment entry.
 {¶ 2} Driftwood owns 63 acres of land at the southeast corner of Ravenna and Girdled Roads, in Concord Township. Driftwood is in the process of developing this land for residential homes, with the proposed development being named Noble Ridge Estates.
 {¶ 3} Eye-Will owns an adjacent, 50-acre piece of property to the east of the Driftwood property. The Eye-Will property's only frontage is on Girdled Road. Eye-Will also intends to develop its property into a subdivision.
 {¶ 4} The Noble Ridge property was to be developed in three phases. This action concerns phase three of the proposed development. Phase three, as originally approved, had a through street connecting the Noble Ridge property to the undeveloped Eye-Will property.
 {¶ 5} Driftwood sought a variance from the approved plan. The variance would allow Driftwood to end Joann Drive with a cul-de-sac rather than continuing the street to connect the development with property owned by Eye-Will. One of Driftwood's concerns was excess traffic flow going into its property from Ravenna Road. Another concern was the number of stream-crossing credits it had from the Army Corps of Engineers.
 {¶ 6} Evidence was presented at the November 2003 meeting before the Planning Commission. Charles Pengal, one of Driftwood's members, stated that using a cul-de-sac would save a stream-crossing credit, as the proposed through-street would cross a stream that feeds Gordon Creek. The Soil and Water Conservation District submitted a form indicating that the lack of a stream crossing would be beneficial to the stream.
 {¶ 7} Mr. Radachy, a Senior Planner with the Planning Commission, recommended denying the variance. Some of his concerns included having proper access for emergency vehicles and general traffic patterns. He also stated that Driftwood could seek additional stream-crossing credits from the Army Corps of Engineers and, if those were denied, Driftwood could reapply for a variance.
 {¶ 8} At the November 2003 meeting, the Planning Commission approved the variance by a six to five vote, with one abstention. Eye-Will appealed this matter to the trial court, pursuant to R.C. 2506.01.
 {¶ 9} At the trial court level, no new evidence was taken. Both parties submitted merit briefs. In its merit brief, in addition to its arguments in support of the variance, Driftwood argued that the administrative appeal was moot, because Eye-Will did not seek a stay of the Planning Commission's decision and Driftwood had performed certain acts in reliance on the variance. Driftwood attached an affidavit from Pengal to its trial brief in support of its mootness argument. Eye-Will filed a motion to strike Pengal's affidavit because it was not part of the administrative record before the trial court. The trial court denied Eye-Will's motion to strike the affidavit.
 {¶ 10} The trial court reversed the decision of the Planning Commission. The trial court found that the Planning Commission's decision was not supported by a preponderance of substantial, reliable, and probative evidence. While the trial court reversed the Planning Commission's decision on the merits, it did not address Driftwood's argument that the administrative appeal was moot due to Eye-Will's failure to move to stay the proceedings.
 {¶ 11} Driftwood raises the following assignment of error:
 {¶ 12} "The trial court erred in reversing the variance granted by the planning commission."
 {¶ 13} Prior to addressing the parties' assigned errors, we note that Eye-Will had standing to appeal the Planning Commission's decision. Eye-Will is a contiguous property owner who was directly affected by the variance.[1]
 {¶ 14} The standard of review for administrative appeals is set forth in R.C. 2506.04, which provides:
 {¶ 15} "The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code."
 {¶ 16} When determining whether the administrative order is unsupported by the preponderance of substantial, reliable, and probative evidence, the "common pleas court considers the `whole record,' including any new or additional evidence admitted under R.C. 2506.03."[2] However, our standard of review is not as broad. As stated by the Supreme Court of Ohio, "`[R.C. 2506.04] grants a more limited power to the court of appeals to review the judgment of the common pleas court only on "questions of law," which does not include the same extensive power to weigh "the preponderance of substantial, reliable and probative evidence," as is granted to the common pleas court.'"[3]
 {¶ 17} We note that administrative agencies are generally in the best position to interpret the technical requirements within the specific area of their expertise.[4] Accordingly, a trial court should generally defer to the administrative agency's interpretation of its own rules,[5] as well as the administrative agency's resolution of evidentiary conflicts.[6] However, this is only the case when the administrative agency's decision is supported by reliable, probative, and substantial evidence.[7]
 {¶ 18} In this matter, Driftwood sought a variance from the requirement that Joann Drive be connected with the adjoining property. The parties, the trial court, and the Planning Commission all agree that this matter is governed by Article VI, Section 5 of the Lake County Subdivision Regulations, which provides:
 {¶ 19} "Where the County Planning Commission finds that extraordinary and unnecessary hardship may result from strict compliance with these regulations, due to exceptional topographic or other physical conditions, it may vary the regulations so as to relieve such hardship provided such relief may be granted without detriment to the public interest and without impairing the intent and purpose of these regulations or the desirable development of the neighborhood and community. Such variations shall not have the effect of nullifying the intent and purpose of these regulations, the comprehensive plan, or the zoning resolution."
 {¶ 20} The Planning Commission approved the following findings of fact and conclusions of law:
 {¶ 21} "The County Planning Commission finds that extraordinary and unnecessary hardship resulting from strict compliance of Article IV Section 2(A)(1) of these regulations, due to exceptional physical conditions, to wit, protection of a headwater stream that feeds Gordon Creek. County Planning Commission therefore grants a variance from the County Subdivision regulations so as to relieve such hardship as such relief may be granted without detriment to the public interest and without impairing the intent and purpose of these regulations or the desirable development of the neighborhood and community. Such variations shall not have the effect of nullifying the intent and purpose of these regulations, the comprehensive plan, or the zoning resolution."
 {¶ 22} The trial court determined that the Planning Commission's decision was not supported by a preponderance of substantial, reliable, and probative evidence. The trial court found the Planning Commission's reasoning, that the variance would protect the stream feeding Gordon Creek, was not supported by a preponderance of the evidence. The trial court noted that the vast majority of evidence went to the number of stream-crossing credits Driftwood would have to use in the project. As a result, the trial court relied on Mr. Radachy's statements that Driftwood could reapply for a variance if the Army Corps of Engineers denied its request for additional stream-crossing credits.
 {¶ 23} Specifically, the trial court noted that the extraordinary and unnecessary hardship must be "due to exceptional topographic or other physical conditions." Essentially, the trial court concluded that the hardship must be attributable to the land, not the developer. In this matter, the trial court found that the majority of the evidence at the hearing concerned the ability of Driftwood to obtain additional stream-crossing credits. This potential hardship did not directly concern the land. Rather, it was a hardship on Driftwood.
 {¶ 24} In making its determination, the trial court engaged in a limited reweighing of the evidence introduced to the Planning Commission. After doing so, the trial court determined that the Planning Commission's decision was not supported by the preponderance of substantial, reliable, and probative evidence. As an appellate court, we are not permitted to engage in a similar weighing of the evidence.
 {¶ 25} After reviewing the record in this matter, we conclude the trial court did not err in reversing the Planning Commission's decision.
 {¶ 26} Driftwood's assignment of error is without merit.
 {¶ 27} In addition to its argument that the trial court should not have reversed the decision of the Planning Commission on its merits, Driftwood also argues that the administrative appeal was moot when the trial court issued its judgment entry. On cross-appeal, Eye-Will also argues the mootness issue with the following assignment of error:
 {¶ 28} "Appellee, Cross-Appellant Eye-Will's administrative appeal was not moot despite the lack of a stay of execution of the variance granted LCPC."
 {¶ 29} Again, the trial court did not address Driftwood's mootness argument. Since the trial court reversed the Planning Commission's decision, we will assume the trial court found the argument without merit.
 {¶ 30} Essentially, Driftwood was asking the trial court to dismiss Eye-Will's administrative appeal because it was moot. Thus, Driftwood's trial brief took the form of a motion to dismiss. Since Driftwood submitted an affidavit that was outside the pleadings, the matter should have proceeded as if on summary judgment. As stated by the Sixth Appellate District:
 {¶ 31} "[W]e believe that the court should have converted the Board's motion to dismiss to a motion for summary judgment. The nature and character of the Board's mootness and standing arguments present questions of whether the court could grant relief on claims presented, not whether it lacked jurisdiction of the subject matter of those claims. Had the court converted the motion, Plaintiffs-Appellants would have had an opportunity to counter both the Board's motion to dismiss and the affidavit on which the motion relied."[8]
 {¶ 32} Eye-Will argues that the affidavit contained information that was not relevant to the mootness argument. We agree that evidence not related to the mootness argument should not have been included in the affidavit.
 {¶ 33} We are troubled by the evidentiary nature of the affidavit attached to Driftwood's appellate brief. The better practice would have been for Driftwood to file a motion to dismiss the administrative appeal, with supporting affidavits, and, if necessary, request an evidentiary hearing with the trial court on the mootness issue. However, for the purposes of this appeal, we will give Driftwood the benefit of construing its affidavit in a light most favorable to its position. This is because the affidavit does not support Driftwood's argument that the administrative appeal was moot.
 {¶ 34} The following sections of the Revised Code are relevant to this matter.[9]
 {¶ 35} R.C. 2505.06 provides:
 {¶ 36} "Except as provided in section 2505.12 of the Revised Code, no administrative-related appeal shall be effective as an appeal upon questions of law and fact until the final order appealed is superseded by a bond in the amount and with the conditions provided in sections 2505.09 and 2505.14 of the Revised Code, and unless such bond is filed at the time the notice of appeal is required to be filed."
 {¶ 37} R.C. 2505.09 provides, in part:
 {¶ 38} "Except as provided in section 2505.11 or 2505.12 or another section of the Revised Code or in applicable rules governing courts, an appeal does not operate as a stay of execution until a stay of execution has been obtained pursuant to the Rules of Appellate Procedure or in another applicable manner, and a supersedeas bond is executed by the appellant to the appellee."
 {¶ 39} R.C. 2505.12 provides, in part:
 {¶ 40} "An appellant is not required to give a supersedeas bond in connection with any of the following:
 {¶ 41} "* * *
 {¶ 42} "(B) an administrative-related appeal of a final order that is not for the payment of money."
 {¶ 43} This appeal was an administrative appeal of a decision that was not for the payment of money. Therefore, the provisions of R.C. 2505.06 and 2505.09 requiring a supersedeas bond to be posted do not apply to this matter.[10]
 {¶ 44} Pursuant to R.C. 2505.09, Eye-Will's appeal did not act as an automatic stay of the Planning Commission's decision. If Eye-Will wished to prevent Driftwood from proceeding with the project pursuant to the variance, it needed to move the trial court for a stay of the Planning Commission's decision. However, for the reasons that follow, Eye-Will's failure to move for a stay did not render the administrative appeal moot.
 {¶ 45} "`When, pending proceedings in error in this court, an event occurs, without the fault of either party, which renders it impossible for the court to grant any relief, it will dismiss the petition in error.'"[11]
 {¶ 46} Unfortunately, there is no bright-line rule as to when a case becomes moot in circumstances such as this. In these situations, mootness must be determined on a case-by-case basis. For example, suppose an environmental group opposes a construction company's plan to clear-cut a section of land for a shopping mall, and the environmental group loses at the administrative level. If the environmental group fails to move for a stay and the trees are cut down, the matter may very well be moot, because it would be impossible for a reviewing court to grant any relief. However, if the trees are not cut down and the company, in reliance on their initial victory, purchases building materials for the proposed shopping mall, it does so at its own risk, because it is aware of the possibility the decision may be reversed. In the latter scenario, the reviewing court could still grant the relief requested, i.e., not allowing the trees to be cut down.
 {¶ 47} While a party who wins at the administrative level proceeds at its own risk when that decision is appealed, the losing party cannot sit by and watch construction proceed. The losing party must move for a stay to protect its own interests in the matter. Otherwise, that party risks the matter being declared moot at the appellate level.
 {¶ 48} In support of its argument that the administrative appeal was moot, Driftwood cites this court's decision inWalouke v. Mentor Bd. of Building and Zoning Appeals.[12]
In Walouke, this court affirmed a trial court's ruling that an administrative appeal granting a variance was moot. A homeowner was granted a variance to construct a garage with a smaller setback. His neighbor appealed the decision granting the variance to the trial court, but did not seek a stay of the variance.[13] The homeowner built the garage according to the variance, and trial court dismissed the neighbor's administrative appeal as moot. This court agreed, holding that a reversal of the board's decision would not affect the subject matter.[14]
 {¶ 49} In Walouke, the garage was completed prior to the matter reaching the trial court level. In the case sub judice, Mr. Pengal's affidavit states that construction on the cul-de-sac had not started. In addition, it states the final plat had not been filed. According to the affidavit, $9,617.75 had been spent on "engineering costs" and $2,164.09 was spent relating to various permits associated with the variance. Unlike the situation in Walouke, it was still possible for the trial court to grant the relief requested.
 {¶ 50} Eye-Will's assignment of error is without merit.
 {¶ 51} The judgment of the trial court is affirmed.
CYNTHIA WESTCOTT RICE, J., concurs, COLLEEN MARY O'TOOLE, J., dissents.
[1] Godale v. Chester Twp. Bd. of Trustees (June 26, 1992), 11th Dist. No. 91-G-1673, 1992 Ohio App. LEXIS 3362, at *3-4, quoting Schomaeker v. First Nat'l Bank (1981),66 Ohio St.2d 304, paragraph two of the syllabus.
[2] Henley v. Youngstown Bd. of Zoning Appeals (2000),90 Ohio St.3d 142, 147, citing Smith v. Granville Twp. Bd. ofTrustees (1998), 81 Ohio St.3d 608, 612.
[3] Henley v. Youngstown Bd. of Zoning Appeals,90 Ohio St.3d at 147, quoting Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 34, at fn. 4.
[4] In re Jack Fish Sons Co., Inc., 159 Ohio App.3d 649,2005-Ohio-545, at ¶ 10, citing Pons v. Ohio State Med. Bd.
(1993), 66 Ohio St.3d 619, 621-622.
[5] Warren v. Warren Mun. Civ. Serv. Comm.,150 Ohio App.3d 719, 2002-Ohio-6928, at ¶ 26, citing Cincinnati City SchoolDist. v. State Bd. of Edn. (1996), 113 Ohio App.3d 305, 312.
[6] Hummel v. Ohio Dept. of Job Family Servs.,164 Ohio App.3d 776, 2005-Ohio-6651, at ¶ 21, citing Univ. of Cincinnativ. Conrad (1980), 63 Ohio St.2d 108, 111.
[7] Bates Amusements, Inc. v. Ohio Dept. of Agriculture, 7th Dist. No. 02 JE 18, 2003-Ohio-7013, at ¶ 50.
[8] Mowry v. Anthony Wayne Local School Dist. Bd. of Edn.
(July 7, 2000), 6th Dist. No. L991423, 2000 Ohio App. LEXIS 3247, at *6.
[9] See R.C. 2506.01.
[10] R.C. 2505.12(B).
[11] Bd. of Commrs. of Montgomery Cty. v. Saunders (Nov. 2, 2001), 2d Dist. No. 18592, 2001 Ohio App. LEXIS 4887, at *2-3, quoting Miner v. Witt (1910), 82 Ohio St. 237, syllabus.
[12] Walouke v. Mentor Bd. of Building and Zoning Appeals
(Dec. 28, 1984), 11th Dist. No. 10-136, 1984 Ohio App. LEXIS 12133.
[13] Id. at *1-2.
[14] Id. at *3.